Tilghman C. J.
The defendant’s counsel object to this indictment as being too general and not expressing any offence with sufficient certainty. [Here the Chief Justice stated the indictment]. The case of the King v. Higginson, 2 Burr. 1232, is very much like this. The only difference is, that instead of drinking, tippling, &c., Higginson is charged with procuring persons to come to his house, and permitting them to remain there, “ fighting of cocks, boxing, “playing at cudgels, and misbehaving themselves to the “ great damage and common nuisance, &c.” The same objection was made to that indictment, yet it was held good. Besides, it is of great weight that this form of indictment is of ancient date in this state, and there have been many convictions under it. I am therefore of opinion that it is sufficient.
There is another exception to be considered, relating to certain evidence admitted on the trial. Sarah Bond, a witness for the commonwealth, having proved several facts, tending to shew, that Stewart kept a disorderly house, was permitted to testify, “ that the house was a matter of general “ complaint by the neighbours, as disturbing them.” It seems that the gentlemen who prosecute for the commonwealth have been in the habit of asking questions of this kind. But the practice has not been acquiesced in, and is now brought before this court for decision. It is agreed on all hands, that this is not one of those cases in which hearsay evidence can be admitted. But it is contended, that the complaint of the neighbourhood is a matter of fact, and therefore, when the witness proves the complaint, she only proves a fact zvithin her ozvn knozvledge. I am not satisfied with this ingenious distinction, which gets round and avoids an important rule of evidence. In the same way all hearsay *345 evidence may be introduced, for it is always a fact, that the witness hears the other person speak, and it is a fact that the words spoken by that person were heard by the witness. But what is the consequence of receiving testimony of this kind? The jury are influenced by declarations not made upon oath, and the adverse party is deprived of the benefit of cross-examining the person making those declarations. Let us analyse Mrs. Bond^s testimony. “ The house was a matter of gene- “ ral complaint that is, the neighbours said, that they heard noises in that house which disturbed them. But we have only their words for that, and perhaps they would have spoken differently upon oath. It was important to the defendant to be permitted to ask what those noises were, and when they were heard, that he might have an opportunity of contradicting the evidence, or explaining the nature of the noise. It was important too, to know who those neighbours were, that their character might be inquired into. And why should they not be produced and examined on oath ? They were close at hand. It appears to me, that the evidence amounted to no more than the general reputation of a disorderly house, and certainly this is not one of the cases in which general reputation is evidence. I am of opinion, therefore, that a new trial should be granted.
Yeates J.
The principle on which the keeping of a disorderly tippling house is punishable by a criminal prosecution, is, that it disturbs the peace and quiet of the neighbourhood, and thereby becomes a common nuisance. In the course of this trial, Sarah Bond,, who lived across the street, opposite to the defendant’s house, swore to specific disorderly acts committed therein, and that persons of bad repute, old and young, male and female, black and white, frequented it both by night and day. She heard fighting no less than nine or ten times within the period of four or five months, the cry of murder issued from the house, and many persons were collected there. She herself was often disturbed by these noises. On the part of the prosecution, she was asked, whether the neighbours did not generally complain of these disturbances, and the defendant’s counsel objected thereto. I had no hesitation in permitting the question to be asked, considering these complaints as independent facts, the effects springing from the causes specially detailed by the witness. *346 No hearsay evidence, of any particular disorders committed in the house, was admitted, but the effects and consequences of these disorders on the feelings of others, according with the feelings of the witness, were deemed by me to be proper and legal testimony. Expressions of general uneasiness at the moment, are distinct from hearsay evidence, for “ out of “the abundance of the heart the mouth speaketh.” I do not view these general complaints in the light of reputation of the gross irregularities permitted by the defendant in his house. These disorders were established by the oaths of eight several witnesses.
It has been urged in arrest of judgment, that no particular facts are stated in the indictment, from which a nuisance may be inferred, and that the offence is not stated with sufficient certainty. The indictment charges : — [Judge Ye ates here stated the indictment]. Although a man has the exclusive right of governing his own house as he thinks proper, which ,X hope never to see invaded, yet he must do it in subservience to the laws and the rights of others. Sic uti suo, ut alienum non laidas, is an incomestible principle. The entertaining persons of both sexes, of evil name and fame, and of dishonest conversation, at unseasonable hours, and suffering them to remain tippling and misbehaving themselves, necessarily eventuates in riots and disorders, injurious to the peace and quiet of the neighbours, and all others passing the street. It produces the same ill-effects as the making of unusual noises in the night with a speaking trumpet, which is held indictable in Rex v. Smith, Stra. 704. So of fighting, boxing, and playing at cudgels, according to the precedent in Rex v. Higginson, 2 Burr. 1232. It is moreover, ascertained to my entire satisfaction, that the form of this indictment precisely agrees with that which has been adopted in Pennsylvania both before and since the American revolution. An argument drawn from common experience, has much weight in settling that an indictment against a common barrator, or a common scold, is good without setting out the particulars. 2 Hawk. c. 25. sec. 59. I will only add, that the grounds on which common stages for rope dancers and common gaming houses have been held to be nuisances, are equally applicable to disorderly tippling houses. They are great temptations to idleness, and are apt to draw together a great number of dis *347 orderly persons, which cannot but be very inconvenient to the neighbourhood.
I am of opinion, the commonwealth is entitled to judgment.
Brackenrxdge J. concurred with the Chief Justice in toto.
A new trial granted»