## COMMONWEALTH *versus* REUBEN HARRINGTON.

Exciting, encouraging, and aiding a person to commit a misdemeanor, is of itself a misdemeanor.

Thus, letting a house to a woman of ill fame, knowing her to be such, with the intent that it shall be used for purposes of prostitution, is an indictable offence at common law.

The time when such contract is alleged in the indictment to have been made, is immaterial.

THE defendant was indicted for letting out and accommodating a part of a house to one Susan Bryant, with the intent that the business of prostitution should be carried on therein. The house was owned by the defendant but not occupied by him. The indictment alleged that he did, on a certain specified day, let out and accommodate this house for the purpose mentioned, and that it was afterwards in fact used for that purpose.

There was no evidence to prove any express agreement that the house should be thus used, but there was evidence that the lessee was a woman of ill fame, and that the defendant knew it when he let the house. The letting was not until some months after the time mentioned in the indictment.

It was contended on the part of the defendant, that it was incumbent on the government to prove an express illegal agreement, and to show that it was made at the time charged in the indictment ; and further, that the facts set forth in the indictment did not constitute an offence, either at common law or by statute.

A verdict was taken against the defendant, subject to the opinion of the Court upon these points.

*Dunlap* now contended that the whole offence, if any, *March 18th.* committed by the defendant, consisted in making an illegal contract, and the contract should be set out truly in the

indictment, and be proved as alleged ; as in a penal action upon the statute of usury, where the variance as to the time is fatal. *Carlisle, qui tam,* v. *Trears,* Cowp. 671. All the acts of the defendant terminate with the completion of this contract, and if it was a legal contract the subsequent illegal acts of a person over whom he has no control cannot make it illegal, any more than the subsequent virtuous acts of such per‧ son could remove the taint if it had been an illegal contract.

But the strong point in the case is, that this act of the defendant does not constitute an offence at law. It is not prohibited by any statute, and there is no precedent, until within a year or two, of an indictment at common law for such an offence ; and yet similar immoral acts must have constantly occurred in large cities, both in this country and in England, for a long period of time. There was no express agreement that the house should be used for an unlawful purpose, and proof of a knowledge that it would probably be so used will not support an allegation of an agreement, nor will it show that any offence was committed. *Holman* v. *Johnson,* Cowp. 341. In *Lloyd* v. *Johnson,* 1 Bos. & Pul. 340, the plaintiff who had washed clothes for the defendant, knowing her to be a prostitute, was allowed to recover for her services, for it was said that such a woman must have clean linen, and it was impossible for the court to take into consideration which of the articles washed were used by the defendant to an improper purpose, and which were not. So here the lessee must have a lodging, and it is impossible to say how far the house was used for a shelter, and how far for improper purposes. It is not enough that a man's acts encourage lewdness, or that he is lewd himself ; the indictment should be for keeping a bawdy-house, and that is an offence personal to the actual master or mistress of such a house, and does not extend to the mere lessor. *Rex* v. *Pierson,* 2 Ld. Raym. 1197 ; *Regina* v. *Williams,* 1 Salk. 383 ; Russell on Crimes, 432, 436 ; *Commonwealth* v. *Dean,* 1 Pick. 387. If the act of the defendant was injurious to the community, it will be easy for the legislature to make a statute upon the subject, as was done in regard to obtaining goods by false pretences ; which was not indictable before the statute of 1815, *c.* 136, although it was morally

as great an offence as the one charged in this indictment. *Commonwealth* v. *Warren*, 6 Mass. R. 72.

*J. T. Austin*, County Attorney, contended that it was not necessary to prove the precise day on which the agreement is alleged to have been made. 1 Chit. Crim. Law, 123. Such proof is required only where time enters into the nature of the offence, as it does in the case of usury. It would be impossible for the government to ascertain when such an agreement as the one in question was entered into. It was not necessary to allege or prove an express agreement that the house should be used for the purposes of prostitution ; it was sufficient to prove by circumstantial evidence an implied agreement. The criminal intent is found by the verdict.

Whether the facts set forth in the indictment constitute an indictable offence, is a question of great consequence to the public. The defendant is charged with enabling and encouraging another person to do an act which is a common nuisance; an offence against the public, tending to the annoyance of the community. 1 Hawk. P. C. c. 75, § 1. Making the agreement was a gross offence against public morals, and though it may have been such an act as has never been prosecuted before, yet if it comes within the general principle, the indictment may be sustained. In *Girardy* v. *Richardson*, 1 Esp. R. 13, Lord *Kenyon* ruled, that *assumpsit* for use and occupation would not lie where the premises were let for a purpose *contra bonos mores*.

PARKER C. J. said, in substance, that the Court were of opinion that there was nothing in the first objection to the conviction, namely, that the lease was not proved to have been made on the day alleged in the indictment.[1] Time does not enter into the constitution of the offence, and this case differs therefore from an indictment for usury, where it is necessary to set forth the time of making the usurious contract.

The principal objection however was, that the facts alleged do not constitute an indictable offence. It is found that the

*March 24th.*

---

[1] See *Treharne's Case*, 1 Moody, 298; *State* v. *Hancy*, 1 Hawks, 460; *Jacobs* v. *Commonwealth*, 5 Serg. & Rawle, 316; *United States* v. *Stevens*, 4 Wash. C C. R. 547.

Common-
wealth
*v.*
Harrington.

defendant let his house to a woman of ill fame, knowing her to be such, with the intent that it should be used for the purposes of prostitution, and that it was so used. There is no statute against such an offence, and the question then is, whether it is indictable at common law. It has been compared to cheating on false pretences, which was not indictable at common law, and which has been made so by a statute. But the cases are different, inasmuch as cheating acts only upon the individual defrauded; whereas this offence is of a public nature, and obviously injurious to the public morals. The real question is, whether exciting, encouraging, and aiding one to commit a misdemeanor, is not of itself a misdemeanor. And we find that it has been held so to be, in the case of *The King* v. *Phillips,* 6 East, 464, in which it was decided, that an endeavour to provoke another to commit the misdemeanor of sending a challenge to fight, is itself a misdemeanor; it being the object of the law to prevent the commission of offences On this ground we think the indictment is sustainable. In *Rex* v. *Scofield,* Cald. 397, it was held that the intent may make an act, innocent in itself, criminal. To apply this principle to the present case. The letting of a house is in itself an innocent act, but the defendant let his house for the purposes of prostitution, and he knew that it was used accordingly. Now keeping a bawdy-house was an offence at common law,[1] and letting a house for such purpose must therefore be a misdemeanor.

A case has been cited, in which a party was allowed, in a civil action, to recover a compensation for washing clothes for the defendant, although the plaintiff knew that the defendant was a prostitute, and that the clothes were used for the purposes of allurement. But this indictment goes further. It alleges, not only that the defendant knew that his house would be put to an unlawful use, but that he let it for that very purpose. And there is a case in 1 Esp. R. 13, (*Girardy* v. *Richardson,*) in which Lord *Kenyon* held that a party letting his house for such a purpose is not enlitled to recover rent [2]

[1] *Rex* v. *Higginson,* 2 Burr. 1232; *Rex* v. *Rogier,* 1 Barn & Cressw. 272 *Hunter* v. *Commonwealth,* 2 Serg. & Rawle, 298; *Commonwealth* v. *Stewart* 1 Serg. & Rawle, 342; *Darling* v. *Hubbell,* 9 Connect. R. 350.

[2] *Lloyd* v. *Johnson,* 1 Bos. & Pul. 340 ; *Dyett* v *Pendleton.* 8 Cowen. 737

*The King* v. *Higgins*, 2 East, 5, is a strong case to show that the common law will, *proprio vigore*, punish in a case like tne one before us. There a man solicited a servant to steal his master's goods, and it was held a misdemeanor to solicit a person to commit a crime.[3]

It being found here that the defendant's house was let to be used for an unlawful purpose, and that his gain was founded upon such use of it, the Court do not think a statute necessary to make his offence indictable. The only case which looks to the contrary is the one in 2 Ld. Raym. 1197, where an indictment against a person for being a bawd was held ill, that being a spiritual offence. The reason does not hold here, as we have no spiritual court, and it does not appear that a person may not here be indicted for being a bawd.

Though we had strong doubts in this case, from the argument of Mr. *Dunlap* and from the circumstance that no case has been found of an indictment for this offence in England, we have nevertheless come to the conclusion, that there is no objection to this indictment on the ground of variance, and that the facts set forth constitute an indictable offence.

*Defendant adjudged to pay a fine, with costs of prosecution.*

Common wealth
*v.*
Harrington.

**31**

---

[3] So procuring, or endeavouring to procure, the seduction of a girl, seems indictable. 3 St. Tri. 519. So endeavouring to lead a girl into prostitution. *Rex* v. *Delaval*, 3 Burr. 1438. The mere solicitation of chastity is **not** indictable. Hawk. P. C. *bk.* 1. 74, § 1. See *contrà*, however, in *The State* **v.** *Avery*, 7 Connect. R. 267