Nelson, Ch. J.
It will be admitted by all, that the act of renting a dwelling house to be kept for purposes of pub- *560 lie prostitution, is, in itself, highly indecent and immoral, evincing a mind deeply depraved and profligate. Indeed, the act is so characterised by the common law, which denounces the contract as illegal and void; But I cannot say that it constitutes a criminal offence punishable by indictment. We have no statute on the subject; and I have been unable to find, after a good deal of search, any precedent or authority in the English common law which would warrant me in sustaining, as I am certainly inclined to do, the conviction in this case. The present indictment is probably the first experiment of the kind in this state, though the offence charged must have been of no uncommon occurrence in oiir principal cities and towns, even conceding the morals of their inhabitants to be as -exemplary as those of like places in other states and countries. The legislature have repeatedly acted upon this and kindred subjects, for the purpose of a more effectual suppression of vice and immorality; but have not noticed the particular case before us. (See 1 R. S. 645, 6, 7, 2d ed.; also 2 id. 586, § 29.) It is true, that the act for which the prisoner was convicted in this case, has been held to be a misdemeanor in a sister state; (Commonwealth v. Harrington, 3 Pick. R. 26;) but the indictment there was sustained upon the principle of the case of King v. Phillips, (6 East, 464.) where it was held, that an endeavor to provoke another, by letter, to commit the misdemeanor of sending a challenge to figljt a duel, was of itself a misdemeanor. The latter case is in many particulars analogous to the one under consideration; as the renting of a house for the purposes of prostitution may be said, in one sense, to encourage and aid the lessee in the commission of a misdemeanor. But the act of renting, as tending to this result, is certainly more remote and indirect than the sending of an irritating and provoking message to another for the express purpose of inducing him to return a challenge. In one case, the means are furnished by Avhieh the party is enabled to perpetrate the crime ; while in the other, the act tends directly and immediately to its accomplishment. Would an armorer who *561 should furnish weapons for a hostile meeting between persons about to engage in a duel, be guilty of a misdemeanor? Or would the like consequences result to a cabinet maker who should provide furniture for a house of ill fame with full knowledge of the purposes for which it was obtained ? It cannot be pretended that either would be adjudged guilty of a crime; and yet the same reasons exist for sustaining a conviction in those cases, as in the one under consideration.
The act of sending a challenge or of endeavoring to excite and provoke a challenge, is indictable as a misdemeanor, because it tends directly and immediately to a breach of the peace; but it is not every harsh and irritating word or speech, though in a measure tending to this result, that constitutes an offence. Thus, it is no crime to call a man a liar or a knave, for the reason that the use of these epithets is too remotely dangerous to the public peace to become the subject of an indictment. (Regina v. Langley, 2 Ld. Raym. 1029; S. C., 6 Mod. 124; 1 Russell on Cr. 276.) Neither is every act done for the promotion of vice and immorality, or tending to that end, the subject of criminal cognizance, even where -the immorality itself is indictable at common law or by statute. The tendency of the act complained of must, at least, be such as directly and immediately, if not necessarily, leads to the commission of criminal immorality.
The public are pretty well guarded against the offence of keeping houses of ill fame. The keepers of them are subject to indictment at common , law,(a) and may be proceeded against as disorderly persons under the statute. Individuals in the habit of resorting to such places may also be punished as disorderly persons.(b) The landlord of a *562 house let for purposes of prostitution, cannot recover his rent; (Lloyd v. Johnson, 1 Bos. & Pull. 340, 341, and cases there cited; Girardy v. Richardson, 1 Esp. Rep. 13;) nor can a merchant or artizan collect the price of articles furnished under the expectation of being paid out of the profits of prostitution; (Bowry v. Bennet, 1 Campb. 348;) nor can a housekeeper recover the price of lodgings let with like expectations. (1 Selw. N. P. 68.)
In the absence of any precedent or authority in the common law either in England or this state, and for the reason that so many statute regulations and judicial decisions have been made having for their object the suppression of the offence out of which this indictment has .grown, without even hinting at the particular offence charged, I prefer leaving it to the legislature to declare its criminality, if deemed expedient to impress that .character upon the act; and am of opinion, therefore, that the judgment should be reversed.
Bronson, J. concurred with the Chief Justice.

а) See 2 Chitty's Cr. Law, 39, note (f) Am. ed. 1835; Martin v. Stilwell, (13 John. R. 275;) Commonwealth v. Stewart, (1 Serg. & Rawle, 342.)

 See Brooks v. The State, (2 Yerg. R. 482,) where it was held that they were indictable.