J-S11040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESSICA RIZOR | : | |
| | : | |
| Appellant | : | No. 348 WDA 2020 |

Appeal from the PCRA Order Entered February 10, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0002637-2004

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:               **FILED: NOVEMBER 25, 2024**

This appeal returns to this Court following the Pennsylvania Supreme Court's reversal of our decision granting relief under the Post Conviction Relief Act ("PCRA")[1] to Appellant Jessica Rizor and vacating her judgment of sentence.  After careful review of Rizor's remaining PCRA issues, we conclude that they lack merit, and we therefore affirm the dismissal of her PCRA petition.

In its opinion remanding this matter for our further consideration, our Supreme Court set forth the factual and procedural history relevant to the claims we address herein:

> In 2004, Rizor concealed from family and co-workers the fact that she was pregnant.  Even Rizor's mother and husband, with whom

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

she lived, were kept in the dark about the pregnancy. Early in the morning the day following Thanksgiving 2004, Rizor went to the bathroom of her home and gave birth to a full-term baby girl. She then placed the baby in plastic bags where the baby subsequently died. Rizor's husband found the deceased baby after Rizor insisted that he take the garbage out of the house. He alerted Rizor's mother, who called 911 and an investigation ensued. The Medical Examiner performed an autopsy and discovered that the baby was born alive before dying by asphyxiation. Rizor gave a written statement to police, wherein she detailed the events surrounding the incident. [] Rizor was charged with murder and related crimes.

In the four years leading up to trial, Rizor was examined by multiple mental health professionals at the behest of her trial counsel, Robert Brady, Esquire ("trial counsel"), and once pursuant to a request by the Commonwealth. Trial counsel's defense strategy was to present a mental health defense through the testimony of Dr. Michael Crabtree and Dr. Laszlo Petras. Trial counsel indicated, albeit very imprecisely, that the expert testimony of Dr. Crabtree and Dr. Petras would prove that Rizor neither premeditated the killing of the baby nor acted with malice in bringing about the baby's death. At points, trial counsel framed this as a diminished capacity defense, which, pursuant to the law, would operate to reduce first degree murder to third degree murder. However, trial counsel also maintained that presenting the testimony would support reducing the homicide to involuntary manslaughter. According to counsel, expert testimony regarding Rizor's depersonalization disorder would explain that she did not lie when she said that she was not pregnant, but that her disorder caused her to disbelieve that she was pregnant.

The Commonwealth moved to preclude the expert mental health testimony on the grounds that it was inadmissible and did not meet the requirements for a mental health defense. The Commonwealth insisted that the defense failed to meet its burden of presenting the requisite "extensive psychiatric testimony establishing the defendant suffered from one or more mental disorders which prevented . . . her from formulating the specific intent to kill." N.T., 3/4/2008, at 23; *see also id.* at 38. Relying on *Commonwealth v. Cuevas*, 832 A.2d 388, 393 (Pa. 2003), the Commonwealth explained that the defense of diminished capacity is extremely limited, and if successful, reduces first degree murder to third degree murder only. N.T., 3/4/2008, at 23. It stated that the defense did not have a single psychiatric

report purporting to provide an opinion about Rizor's inability to formulate the specific intent to kill, and thus there was no scientifically reliable evidence to meet the standard. *Id.* at 23-24, 41. While that motion was pending, the Commonwealth offered Rizor a five and a half to thirty-year sentence of imprisonment in exchange for a plea of guilty but mentally ill to third degree murder.

At a pretrial hearing that occurred after the jury was seated, the court addressed both the plea offer and the mental health evidence. First, the court began discussing the mental health evidence in chambers when Rizor was not present, but it did not resolve the issue during that discussion. N.T., 3/4/2008, at 8-47. The hearing progressed to the courtroom, and with Rizor present, the trial court conducted a colloquy regarding her rejection of the plea. *Id.* at 48-53. During the colloquy, the court reviewed the charges against Rizor as well as the possibility of a life sentence. *Id.* at 49. The plea offer was recited on the record, and Rizor confirmed that she rejected the offer. *Id.* at 50. She also confirmed that she had discussed the plea offer with her attorneys and her family. *Id.* . . .

Thereafter, the trial court issued a preliminary ruling precluding the admission of the mental health expert testimony. *Id.* at 60-61. It was after Rizor rejected the offer that the trial court precluded the mental health evidence. Rizor proceeded to a jury trial where trial counsel attempted to convince the jury that the baby was stillborn, and therefore, that Rizor did not kill the newborn.

Rizor was convicted of first degree murder, concealing the death of a child, and abuse of a corpse. [18 Pa.C.S. §§ 2502(a), 4303(a), and 5510, respectively.] On June 5, 2008, she was sentenced to life imprisonment. On direct appeal, the Superior Court affirmed the judgment of sentence, rejecting a claim that the trial court erred in precluding the mental health evidence. Th[e Pennsylvania Supreme] Court denied Rizor's Petition for Allowance of Appeal.

On September 26, 2011, Rizor timely filed an uncounseled PCRA petition which she subsequently amended with the PCRA court's permission and the aid of counsel. PCRA Petition, 9/26/2011; First Amended PCRA Petition, 9/9/2013; Second Amended PCRA Petition, 10/4/2014. In her second amended PCRA petition, she raised various claims of ineffective assistance of counsel,

[including a claim that] trial counsel provided deficient advice with regard to the plea offer, a claim which she entitled: "failure to communicate with defendant, prepare for trial, review plea offer, and discuss sentencing guidelines[.]" Second Amended PCRA Petition, 10/4/2014 ¶¶ 28-39 (capitalization removed). . . . [In addition,] Rizor alleged that trial counsel was ineffective in failing to present a cognizable defense. *Id.* ¶¶ 40-62 (entitling claim "failure to present a cognizable defense").

*Commonwealth v. Rizor*, 304 A.3d 1034, 1037-40 (Pa. 2023) ("*Rizor III*")

(footnotes omitted).

Rizor subsequently filed a witness certification of trial counsel regarding a conversation between PCRA counsel and trial counsel in which trial counsel indicated that he was willing to testify regarding his representation of Rizor. Witness Certification of David J. DiCarlo (PCRA counsel) regarding trial counsel, 10/23/2014, at 1-2.[2] He would testify, inter alia, that he possessed no evidence to contest the Commonwealth's theory that the baby was born full term; that he believed that the mental health testimony would lead to an acquittal or a manslaughter verdict, at worst; that he did not realize that his arguments to the jury that the baby was stillborn meant that the jury would not be able to consider manslaughter; and that he believes that if he had been better prepared and not committed these (and other) errors, the result of the trial would have been different. *Id.*

*Id.* at 1041 n.17.

The Commonwealth filed an answer to Rizor's second amended petition, and on July 16, 2015, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the petition without a hearing, as well as an

_____

[2] Subsequent to his filing of the witness certification for Attorney Brady, Attorney DiCarlo withdrew from representing Rizor as he became an administrative law judge. Joshua H. Camson, Esquire, has represented Rizor since Attorney DiCarlo's withdrawal.

accompanying opinion. Rizor submitted a response, and on February 5, 2016, the PCRA court entered an order and opinion dismissing the petition.

Rizor filed a timely appeal, arguing to this Court that the PCRA court erred in dismissing her petition without holding an evidentiary hearing. We agreed, vacating the dismissal order and remanding for the lower court to hold a hearing concerning Rizor's claims that trial counsel provided deficient advice to her regarding the plea offer and that trial counsel did not present a cognizable defense at trial. *See Commonwealth v. Rizor*, No. 291 WDA 2016, 2017 WL 2482941, *3 (Pa. Super., filed June 8, 2017) (unpublished memorandum) ("*Rizor I*").

> Returning to the procedural history, on remand, the PCRA court scheduled an evidentiary hearing which ultimately took place on June 8, 2018. Only Rizor testified. Rizor testified regarding the plea discussions and her rejection of the plea. She explained that trial counsel discussed the plea deal with her on the morning of jury selection. She admitted that he advised her that the offer was for a sentence of five and a half to thirty years of imprisonment. N.T., 6/8/2018, at 50-51. She also acknowledged that trial counsel told her that she could be convicted of first or third degree murder, and she knew of the possibility of a life sentence, though she stated that "he didn't specify, you know, specifics as far as third degree goes." *Id.* at 47-48.
>
> Rizor testified regarding the discussion she had with trial counsel regarding the plea offer: "He told me I had one more chance [to take the plea], if I wanted to take it I could." N.T., 6/8/2018, at 37-38. "I asked him if he thought we had a good chance of winning at trial. He said, absolutely. And I told him that if there was a chance, that I did want to take it to trial." *Id.* She admitted on cross-examination that trial counsel did not tell her that there was a 100% chance of beating the charges. *Id.* at 53-54. PCRA counsel asked her, "if [trial counsel] had told you, we have no chance of winning, how would that have affected your decision?" and she answered: "If I had no chance, I would have taken the

- 5 -

plea offer." *Id.* at 42. She testified that trial counsel never told her that she did not have a chance, not even after the trial court precluded [] the mental health evidence. *Id.* On cross-examination, she acknowledged that "[t]here is always that chance" of being found not guilty and she was hoping for that chance. *Id.* at 54. Rizor also testified that she rejected the plea offer because trial counsel told her that she "would never set foot on state grounds." *Id.* at 40. She said that trial counsel "assured [her] that [she] would get something less than" the time offered in the plea offer. *Id.* at 42.

With regard to the mental health reports, Rizor admitted that prior to trial, she knew that expert mental health reports would not be introduced into evidence on her behalf. N.T., 6/8/2018, at 38-39. Further, she testified that her understanding was that the prosecution still could call those witnesses, and "if they did, then [trial counsel] would be able to question them." *Id.* at 39. She testified that trial counsel told her that the prosecution probably would call the expert witnesses, *id.* at 39-40, but she also admitted on cross-examination that there was nothing specific that made her think the Commonwealth would introduce the mental health evidence, *id.* at 56-58. In response to questioning by the PCRA court, she testified that by the end of trial, when she saw that no mental health expert testified from either side, she did not attempt to restart conversations with trial counsel about the plea deal. *Id.* at 69-70. She stated that she questioned trial counsel about why certain witnesses were not called, but that he assured her that "he had things under control." *Id.* Finally, she testified that she was under the impression that the plea offer was no longer available after she had rejected it on the record. *Id.* at 70.

The PCRA court scheduled another hearing for November 26, 2018, and ordered that trial counsel, who had since retired from the practice of law and left the jurisdiction, make himself available for the hearing. Despite this, trial counsel did not comply with the court's order. [Although t]rial counsel was deemed unavailable, [] the PCRA court [did not find that trial counsel's statements fell within any valid hearsay exception and] precluded testimony regarding the conversation between trial counsel and first PCRA counsel during which trial counsel purportedly admitted many of the allegations of his ineffective assistance.

*Rizor III*, 304 A.3d at 1044-45.

The PCRA court issued an opinion and order on January 16, 2020, in which the court indicated its intent to dismiss the PCRA petition. The court found that Rizor's allegations that trial counsel both did not review the plea offer with her and advised her to reject it to be contradictory and belied by the plea colloquy and other pre-trial proceedings. PCRA Court Opinion, 1/16/20, at 11-16. The PCRA court "did not find credible [Rizor's] claims that she was uninformed at the time she rejected the plea offer, that she did not know that her mental health experts would not be permitted to testify, and that she would have rejected the Commonwealth's plea offer had she known the defense mental health experts would not be permitted to testify." *Id.* at 22.

With respect to the claim that trial counsel was ineffective for failing to present a cognizable defense, the PCRA court found that this was "essentially a reiteration of the first allegation of ineffectiveness" and was "refuted by the record." *Id.* at 23-24. The court underscored that none of the expert reports supported a diminished capacity defense that Rizor could not formulate a specific intent to kill and that trial counsel informed Rizor of this fact when she went to trial. *Id.* at 24-28. While Rizor asserted that trial counsel would have testified to his inadequate presentation of her case and lack of understanding of the diminished capacity defense, the court found that there was "no evidence offered to support these purported self-deprecating claims of trial counsel, and the statements were not admissible without subjecting trial counsel to cross-examination." *Id.* at 27. Moreover, the court stated that

trial counsel's lack of awareness of the defense was refuted by his statement to the trial court that he was attempting to admit the mental health testimony for other reasons apart from the diminished capacity defense. *Id.* at 27-28.

The court further found that Rizor had not proved prejudice based upon the alleged inadequate defense:

> The failed efforts of trial counsel to introduce [Rizor's] mental health reports, which were clearly not admissible and not relevant to guilt or innocence, whether due to his misunderstanding or otherwise, did not affect the outcome of the trial.
>
> That [Rizor] did not have a "cognizable defense" to the charges cannot be attributed to trial counsel. [Rizor] admitted that she placed the baby in a plastic garbage bag and that she discarded the baby's body into the trash, however, [Rizor] claimed that the child was "still born" and "blue" before she did this. The pathology reports presented by the Commonwealth refuted [Rizor's] claim that the child had expired prior to being placed in the plastic garbage bag by [Rizor]. During trial, [Rizor's] trial counsel acknowledged that he had engaged an expert in pathology to review the autopsy reports, but that the defense expert had concurred with the Commonwealth's expert. During argument on this petition, PCRA counsel admitted that the defense had engaged a second expert to review the autopsy reports, and that this expert had concurred with the Commonwealth's expert as well. . . .
>
> Moreover, [Rizor] admitted to police that she attempted to conceal her actions by cleaning up the bathroom and the carpeting and placing the baby's body into the trash.
>
> Accordingly, counsel cannot be deemed ineffective for failing to present a cognizable defense where none existed.

*Id.* at 29.

Rizor filed a response, and on February 10, 2020, the PCRA court dismissed her petition. Order, 2/10/20. Rizor filed a timely appeal, and in

her Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, raised the ineffectiveness claims based upon deficient advice as to the plea and presentation of an inadequate defense. Concise Statement of Errors, 3/17/20, ¶¶ 3-5. Rizor also raised two issues concerning the preclusion of her prior PCRA counsel's testimony about his 2014 conversations with trial counsel where trial counsel allegedly stated his own ineffectiveness and an additional claim that the PCRA court misapplied the legal standard for ineffective assistance of counsel claims. *Id.*, ¶¶ 1-2, 6. The PCRA court issued a Rule 1925(a) opinion, in which it addressed the ineffective assistance claims with similar analysis to that stated above. *See* PCRA Court Opinion, 6/9/20, at 19-39. The court also discussed the claim regarding prior PCRA counsel's proffered testimony, finding that trial counsel was unavailable under Pa.R.E. 804 but that Rizor had not shown that the statements were against pecuniary interest or exposed him to civil liability or that the trial counsel's statements were supported by corroborating circumstances of their trustworthiness. *Id.* at 17-19. The court additionally stated that it applied the proper standard to Rizor's claims and her argument to the contrary was "misguided." *Id.* at 39.

In our prior decision in this appeal, we concluded that there was arguable merit to Rizor's ineffectiveness claims where she was under the impression when she declined her plea "that her counsel could question the mental health experts if and when they were called as witnesses by the Commonwealth," even if trial counsel would not be able to introduce the mental health reports themselves. ***Commonwealth v. Rizor***, No. 348 WDA

2020, 2021 WL 4704669, *4 (Pa. Super., filed Oct. 8, 2021) (unpublished memorandum) ("***Rizor II***"). "Hence, when [Rizor] rejected the plea bargain offered by the Commonwealth, that decision was predicated upon the mistaken belief that her attorney would be able to present a mental health defense." ***Id.*** We further determined that "the prejudice in this case is self-evident" because "[h]ad counsel advised [Rizor] to take the plea and [Rizor] thereby accepted the advice, she would have received a sentence of 5½ to 30 years of incarceration," rather than the life without parole sentence she did receive. ***Id.*** at *5. We therefore reversed the PCRA court's order, vacated Rizor's judgment of sentence, and remanded for new trial or entry of a plea. ***Id.***

The Commonwealth filed a petition for allowance of appeal challenging our grant of PCRA relief, and Rizor filed a cross petition asserting that we should have ordered the lower court to accept Rizor's plea to the original offer and sentence her accordingly. ***Commonwealth v. Rizor***, 281 A.3d 1028 (Pa. 2022) (table); ***see also Rizor III***, 304 A.3d at 1037 n.4. Our Supreme Court granted the cross petitions and ultimately vacated the grant of relief on the basis that Rizor had not demonstrated prejudice from trial counsel's conduct.

First, with respect to trial counsel's advice on the plea offer, the Court concluded that Rizor did not meet her burden of establishing that "but for the advice of trial counsel, there [wa]s a reasonable probability that she would have accepted the plea." ***Rizor III***, 304 A.3d at 1057. The Court noted that, contrary to our discussion in ***Rizor II***, the trial court had not yet excluded her

mental health reports when Rizor considered the plea offer; therefore, at that time, she still had a "colorable defense" to utilize "the mental health evidence to prove manslaughter," and "there existed a chance of success at trial." *Id.* at 1049, 1058. Further, as the Court observed, the PCRA court did not find credible Rizor's testimony "that she would not have rejected the Commonwealth's plea offer had she known the defense mental health experts would not be permitted to testify." *Id.* at 1058 (quoting PCRA Court Opinion, 1/16/20, at 22). The Court concluded that it was bound by the lower court's credibility determinations absent any other credible evidence establishing that she would have taken the plea deal. *Id.* at 1058-60.

Our Supreme Court next addressed Rizor's ineffectiveness claim regarding trial counsel's advice to her after the preclusion of the mental health evidence and his failure to request a new plea offer, finding that Rizor had not "articulate[d] what prejudice she suffered as a result of this alleged ineffective assistance." *Id.* at 1060. Noting that "the preclusion order virtually eviscerated her defense," the Court stated that it was far from a certainty that the Commonwealth would have tendered the same offer. *Id.* In light of Rizor's general averment of prejudice and the PCRA court's finding that she would not have accepted the offer even if she had known the evidence would be precluded, the Court determined that Rizor was not entitled to relief on this claim. *Id.*

The Supreme Court thus vacated our judgment granting relief and remanded for this Court to address any outstanding issues in this appeal "to

the extent that they remain unresolved in light of our decision." *Id.* In her

brief following remand, Rizor raises the following issues:

> 1. Did the PCRA court err in refusing to allow the testimony of [prior PCRA counsel] concerning his earlier conversations with trial counsel where trial counsel admitted he was ineffective in this matter?
>
> 2. Did the PCRA court err in refusing to admit the statements of trial counsel where those statements were proper evidence for the PCRA court's consideration?
>
> 3. Did the PCRA court err in dismissing [Rizor's] Petition where [Rizor] proved that trial counsel did not present a cognizable defense, thus resulting in a conviction of murder and a sentence of life in prison?
>
> 4. Did the PCRA court apply the wrong legal standard by concluding that there were no genuine issues of material fact rather than applying the *Pierce*[3] test to Appellant's properly pled and proven Petition?

Appellant's Brief at 6 (PCRA court disposition omitted).

> Our Supreme Court set forth the legal standards that govern our review:
>
> As we are addressing [an] appeal from the PCRA court's denial of relief, we consider whether the factual findings are supported by the record and free of legal error. *Commonwealth v. Lopez*, 249 A.3d 993, 998 (Pa. 2021). We review the legal conclusions de novo, but the PCRA court's credibility determinations, when supported by the record, are binding. *Id.* Finally, the scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the Commonwealth as the prevailing party before the PCRA court. *Commonwealth v. Koehler*, 36 A.3d 121, 177-78 (Pa. 2012).
>
> To be entitled to PCRA relief, Rizor must establish, by a preponderance of the evidence, that she has been convicted of a crime under the laws of the Commonwealth and is currently

_____

[3] *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

serving a sentence of imprisonment, 42 Pa.C.S. § 9543(a)(1), that her conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2), that her claims have not been previously litigated or waived, and that the failure to litigate the issues prior to or during trial was not the result of a rational, strategic or tactical decision by counsel. 42 Pa.C.S. § 9543(a)(3), (4). Counsel is presumed effective. ***Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014). To succeed on a claim asserting the ineffective assistance of counsel, as is raised here, a petitioner must rebut that presumption by pleading and proving, by a preponderance of the evidence, three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. ***Commonwealth v. Pierce***, 527 A.2d 973, 975-76 (Pa. 1987). If a petitioner fails to satisfy any one of the three elements, her claim fails. ***Commonwealth v. Brown***, 196 A.3d 130, 150-51 (Pa. 2018).

***Rizor III***, 304 A.3d at 1050-51.

Further, as Rizor has raised evidentiary issues, we note that the "admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." ***Commonwealth v. Johnson***, 289 A.3d 959, 1009 (Pa. 2023) (citation omitted). An abuse of discretion will be found not "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id.*** (citation omitted).

In her first two issues, which she discusses in one consolidated section in her brief, Rizor argues that the PCRA court abused its discretion in not permitting her prior PCRA counsel to testify regarding his conversations with

trial counsel, which were set forth in a witness certification filed in the PCRA court. *See* Amended Witness Certification of Robert Brady, 10/23/14. According to the certification, trial counsel would have testified, *inter alia*, that he "tried a bad case," he "should have been better prepared," he was "not aware of the case law precluding the admissibility of" the mental health evidence, and "he did not realize that the jury could not consider verdicts of voluntary or involuntary manslaughter because of [Rizor's] assertion that the baby was still born." *Id.* at 1 (unnumbered).

Rizor's current PCRA counsel sought to call prior PCRA counsel to testify as to trial counsel's statements in the 2018 hearings, relying primarily on the hearsay exception of Rule of Evidence 804(b)(3) for statement against interest but also citing the exception for a statement of then-existing mental, emotional, or physical condition of Rule 803(3). N.T., 4/9/18, at 7; N.T., 6/8/18, at 3-10. A statement against interest is defined in Rule 804(b)(3) as follows:

> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> . . .
>
> (3) Statement Against Interest. A statement that:
>
> > (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, **it was so contrary to the declarant's** proprietary or **pecuniary interest or had so great a tendency** to invalidate the declarant's claim against someone else or **to expose the declarant to civil** or criminal **liability**; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Pa.R.E. 804(b)(3) (emphasis added). Rule 803(3) provides, regardless of the declarant's availability, for the admission of a hearsay "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)[.]" Pa.R.E. 803(3).

Current PCRA counsel represented to the PCRA court that he had attempted to contact trial counsel to testify at the hearings, but trial counsel refused, stating that he had retired and moved out of the country and was experiencing mental decline and memory issues. N.T., 4/9/18, at 4-5; N.T., 6/8/18, at 14-15; *see also* Amended Witness Certification of Robert Brady, 10/23/14, at 2 (stating that trial counsel stopped practicing law after Rizor's trial amid "memory difficulties" and other mental health problems likely stemming from his Vietnam War service). The PCRA court accepted that trial counsel was unavailable to testify pursuant to Rule 804 after trial counsel did not respond to an order directing his appearance. Order, 10/17/18; N.T., 11/28/18, at 18; *see* Pa.R.E. 804(a)(2) ("A declarant is considered to be unavailable as a witness if the declarant . . . refuses to testify about the subject matter despite a court order to do so."). However, the court did not find that Rizor had established that prior PCRA counsel's testimony would have constituted a statement against trial counsel's pecuniary interest or exposed

him to civil liability and therefore sustained the Commonwealth's objection to that testimony. N.T., 11/28/18, at 18. The court also rejected Rizor's argument that prior PCRA counsel's testimony as to trial counsel's recollection of his trial strategy could be allowed as a "statement of [trial counsel's] then-existing state of mind (such as motive, intent, or plan)." N.T., 6/8/18, at 11-12; Pa.R.E. 803(3).

Rizor argues that trial counsel's out-of-court statements to prior PCRA counsel should have been admitted because they were "clearly made in candor and honesty about the case and his failures." Appellant's Brief at 17. Citing to trial counsel's "candid" and "vivid" discussions of his mental health issues and mishandling of the trial, Rizor contends that "[t]hese are not the statements of a man hiding from the truth," and instead "are the statements of a man speaking against his own potential pecuniary or proprietary interest, and telling the truth despite the potential harm." *Id.* at 17-18. Citing our Supreme Court's recognition that "[p]eople are apt to speak freely and falsely in their own favor but are reluctant to speak falsely to their pecuniary or proprietary detriment," Rizor suggests that trial counsel's admissions as to his failings "fit squarely in both the black letter and purpose of" Rule 804(b)(3). *Id.* at 18 (quoting *Heddings v. Steele*, 526 A.2d 349, 352 (Pa. 1987)).[4] With

_____

[4] Rizor also argues that the PCRA court erred by holding that trial counsel's statements should not be admitted because she did not demonstrate corroborating circumstances as to the statements' trustworthiness, as this requirement of Rule 804(b)(3)(B) only applies where the statement "tends to *(Footnote Continued Next Page)*

respect to Rule 803(3), Rizor asserts that trial counsel's assertions to prior PCRA counsel that "he was burning out," "having memory difficulties," and not feeling "right" during the trial were the "epitome" of a statement of the declarant's state of mind and should thus have been admitted. *Id.* at 20 (quoting Amended Witness Certification of Robert Brady, 10/23/14, at 2).

We agree with the PCRA court that Rizor did not meet her burden of showing that trial counsel's out-of-court statements could be admitted under either proffered hearsay exception. *See Commonwealth v. Smith*, 681 A.2d 1288, 1290 (Pa. 1996) ("[T]he burden of production is on the proponent of the hearsay statement to convince the court of its admissibility under one of the exceptions."). First, with respect to Rule 804(b)(3)'s statement-against-interest exception, trial counsel's statements could not have caused him pecuniary harm when counsel had already retired and ceased practicing law at the time of his conversation with prior PCRA counsel. *Cf. Hedberg v. Wakamatsu*, 126 N.E.3d 956, 962 (Mass. 2019) (medical student's admission that he leaned on plaintiff during surgery in a manner that caused a potentially permanent injury to her leg was against his pecuniary interest as it "reflect[ed] negatively on his ability and judgment as a physician" at the beginning of "a burgeoning career"). To the extent trial counsel's admissions

_____

expose the declarant to criminal liability." Pa.R.E. 804(b)(3)(B); Appellant's Brief at 19-20. In light of our ruling that Rizor did not show that the statements were against trial counsel's pecuniary interest or exposed him to civil liability under Rule 804(b)(3)(A), we do not address the trial court's ruling on paragraph (B).

reflected poorly on his reputation in the legal community, that would not be sufficient to bring his claim within the statement-against-interest exception. *See Heddings*, 526 A.2d at 352-53 (rejecting extension of statement-of-interest exception to cases where the declarant's statement only reflected negatively on his "social interest"). Furthermore, Rizor did not meet her burden of demonstrating that trial counsel's statements had a "tendency to . . . expose [him] to civil . . . liability." Pa.R.E. 804(b)(3)(A); *see Smith*, 681 A.2d at 1290. While Rizor vaguely alludes to trial counsel's exposure to a legal malpractice claim based on his admissions, she has not made any showing before the trial court or this Court that such a claim would have been viable.[5]

It is equally clear that trial counsel's statements were not admissible under the Rule 803(3) exception for statements reflecting a declarant's state of mind. First, Rule 803(3) would only be of limited potential benefit as it would only allow prior PCRA counsel to testify as to limited portions of trial

---

[5] A legal malpractice action related to representation of a criminal defendant may proceed as a tort or contract action. *Bailey v. Tucker*, 621 A.2d 108, 112 (Pa. 1993). A tort action would very likely be barred by the applicable two-year statute of limitations, measured from the date of trial counsel's final representation of Rizor at the conclusion of her direct appeal in 2011, more than two years before trial counsel's 2014 statements, and moreover such a claim requires proof of actual innocence, which Rizor has not alleged in these proceedings. *Id.* at 113, 115-16 & n.17; 42 Pa.C.S. § 5524(7). A contractual malpractice action may have been within the four-year statute of limitations period at the time of trial counsel's conversation with prior PCRA counsel, but there is nothing in the record as to any contractual term that trial counsel would have breached, which is a necessary showing for such a claim. *Bailey*, 621 A.2d at 115-17 & n.17; 42 Pa.C.S. §§ 5525(a)(3), (8).

counsel's statements captured in the witness certification relating to his state of mind and mental condition and not trial counsel's factual memories of his conduct at Rizor's trial, which would have to have been supported by another hearsay exception. **See** Pa.R.E. 803(3) (excluding "a statement of memory or belief to prove the fact remembered or believed" from the exception's purview); **Commonwealth v. Fitzpatrick**, 255 A.3d 452, 479-80 (Pa. 2021) ("factual component" of a statement that reflects that a declarant's state of mind must be admitted through an independent hearsay exception). Moreover, Rizor would not even be able to admit trial counsel's discussion of his state of mind under Rule 803(3) as this exception applies only to the declarant's "then-existing" state of mind, Pa.R.E. 803(3), whereas trial counsel's recollections here were not of his contemporaneous state of mind but rather his mental state at the time of trial, six years prior. **See Fitzpatrick**, 255 A.3d at 479 (providing that a statement is facially admissible under Rule 803(3) "so long as the statement refers to the speaker's mindset as it existed at the time the statement was made"). Therefore, we conclude that the PCRA court did not abuse its discretion in declining to admit prior PCRA counsel's testimony recounting his hearsay conversations with trial counsel through either the statement-against-interest exception of Rule 804(b)(3) or the state-of-mind exception of Rule 803(3).

Rizor's third issue concerns her claim that PCRA counsel was ineffective for failing to raise a cognizable defense. Rizor argues that "even disregarding that trial counsel erroneously advised [her] to proceed to trial" based upon

- 19 -

the faulty assumption that the mental health evidence would be admissible, trial counsel never was able to formulate an alternate defense. Appellant's Brief at 22-23. Rizor asserts that "[w]hen the trial court precluded [the mental health] defense, [trial counsel] was required, nonetheless, to put on some kind of cognizable defense, and he failed to do so." *Id.* at 23. Rizor contends that trial counsel "could have no reasonable basis for presenting what amounted to no real defense to the charges" after his initial defense was precluded. *Id.* at 24. With respect to prejudice, Rizor avers that:

> Of course, [trial counsel's] lack of any defense strategy seriously prejudiced [Rizor]. She is serving the remainder of her life in prison because of this conviction. Had she had an attorney zealously advocating for her, or at least being honest with her, the outcome in this case would have been different.

*Id.* at 25.

We must first consider whether this issue is properly before this Court. In *Rizor II*, we addressed Rizor's two ineffective assistance of counsel claims together as her arguments that trial counsel did not properly advise her to accept the plea offer and that he had not prepared a cognizable defense substantially overlapped. *See* 2021 WL 4704669, *5 n.8 (stating that this Court addressed all of Rizor's issues except her claims concerning the admissibility of trial counsel's out-of-court statements and whether the PCRA court applied the correct standard). Our Supreme Court similarly noted that it was addressing both Rizor's plea advice and cognizable defense claims, indicating that only Rizor's issues related to the evidentiary rulings and the

- 20 -

PCRA court's application of the proper standard remained outstanding. **See Rizor III**, 304 A.3d at 1039-40, 1048, 1057-60 & nn.2, 24, 25, 26. Nevertheless, we recognize that these prior decisions focused on trial counsel's decision to put on a mental health defense strategy and the advice given by counsel to Rizor before and after the preclusion of mental health evidence, rather than whether trial counsel focused on the mental health defense at the expense of other trial strategies. **See, e.g.**, **id.** at 1057, 1060; **Rizor II**, 2021 WL 4704669, *4. We will therefore presently analyze Rizor's ineffectiveness claim to the extent she argues that trial counsel ignored viable trial strategies other than what counsel pursued at trial.

Here, we find that Rizor's ineffectiveness claim fails under the third prong of the ineffectiveness test, whether she "suffered prejudice as a result of [trial] counsel's action or inaction." **Rizor III**, 304 A.3d at 1051 (citing **Pierce**, 527 A.2d at 975-76); **see also id.** ("If a petitioner fails to satisfy any one of the three elements [of the **Pierce** test], her claim fails."). "To establish prejudice in the context of this standard, a petitioner must establish that there is a reasonable probability that the result of the proceeding would have been different but for the complained-of conduct." **Commonwealth v. Thomas**, ___ A.3d ___, 2024 WL 4293349, *3 (Pa., filed Sept. 26, 2024). Thus, in the present case, Rizor needed to show more than just trial counsel's failure to present a "cognizable defense" but rather that there was some other strategy available or some additional evidence that could have been presented that would have afforded her a reasonable probability of a more favorable verdict

than what the jury returned. *See Commonwealth v. Johnson*, 966 A.2d 523, 540 (Pa. 2009) (where claim was based upon trial counsel's failure to call certain witnesses and inadequate preparation of other witnesses, prejudice was measured by whether there was "a reasonable probability that the introduction of such evidence would have altered the outcome of the trial"); *see also Rizor III*, 304 A.3d at 1060 n.37 (majority noting that, while it "agree[d] with many of the dissent's concerns that trial counsel's strategy appears to have been scattershot and flimsy[, . . .] those concerns do not speak to prejudice"). That is particularly true here where there was substantial evidence of Rizor's guilt. *See* PCRA Court Opinion, 1/16/20, at 29 (discussing evidence establishing that Rizor wrapped her just-born baby tightly in a plastic bag and attempted to discard the body and conceal all traces of the birth, lied about what transpired when the baby was discovered, and uncontroverted expert testimony was presented that the baby had air in her lungs and was not stillborn).

Rizor's PCRA petition alluded to various witnesses trial counsel could have called, alternate defenses that could have been presented at trial, and lines of questioning that counsel could have explored with Commonwealth witnesses during cross-examination. *See* Second Amended PCRA Petition, 10/4/2014, ¶¶ 66, 79, 82-83, 89-90, 98-99, 105-07, 120-21, 125, 132, 135 (alleging that trial counsel failed to investigate a defense based on pregnancy denial syndrome; failed to properly prepare to cross-examine various Commonwealth witnesses, including Rizor's husband who could have been

impeached with prior inconsistent statements; failed to call various fact witnesses, including her parents and the private investigator retained by the defense; and failed to call witnesses who would have testified to her good character). However, Rizor did not present any evidence at the PCRA hearings regarding alternate trial strategies, nor did she demonstrate that there were other witnesses who would have been available to provide favorable testimony on her behalf at trial. *See Commonwealth v. Brown*, 196 A.3d 130, 167 (Pa. 2018) (to prove that trial counsel was ineffective for failing to call a witness, must show, *inter alia*, that witness existed and was willing and able to testify for the defense and that the witness's absence was so prejudicial as to deny a fair trial). Indeed, Rizor confined her case at the PCRA hearing to trial counsel's ineffective assistance at the plea stage. N.T., 11/26/18, at 26-27 (Rizor's counsel noting that, while he did not concede his additional PCRA claims, he was only "arguing" the "plea negotiation issue" at the PCRA hearing). Moreover, Rizor has effectively conceded in this appeal that there was no alternate defense available to trial counsel, as "[t]he only chance of any defense was some kind of mental health defense, which the trial court precluded." Appellant's Brief at 23; *see also* N.T., 11/26/18, at 19-20, 24 (trial counsel admitting to the PCRA court that the mental health defense was the "sole defense" available to trial counsel). Therefore, in light of the complete lack of proof regarding prejudice resulting from trial counsel's

decision not to pursue an alternate trial strategy, we must conclude that Rizor's remaining ineffectiveness claim warrants no relief.[6]

In her last issue, Rizor contends that the PCRA court employed the incorrect standard when dismissing her petition by finding that there were "no genuine issues of material fact" that would have entitled Rizor to PCRA relief and therefore "no purpose would be served by any further proceedings." Order, 2/10/20. Rizor notes that the standard enunciated in the court's February 10, 2020 order is the one applicable when a PCRA court reviews a petition and determines that the matter should be dismissed without a hearing, but the lower court had in fact held a hearing after our remand in **Rizor I**. **See** Pa.R.Crim.P. 907(1) (setting forth standard for notice of intent to dismiss a PCRA petition without a hearing); **see also Rizor III**, 304 A.3d at 1045 n.23 (noting that the "PCRA court styled [its January 16, 2020 opinion

_____

[6] The admission of trial counsel's hearsay statements through prior PCRA counsel's testimony, **see supra** (issues one and two), would not have altered our disposition of this ineffectiveness claim. According to the witness certification, trial counsel's out-of-court statements largely concerned his misplaced reliance on the mental health defense, his lack of preparedness for trial, and his own deteriorating mental condition. **See** Amended Witness Certification of Robert Brady, 10/23/14, at 1-2. However, these statements are not sufficient to show prejudice from trial counsel's conduct, i.e. they do not shed light on whether trial counsel could have pursued a different trial strategy that would have led to a more favorable result. **Thomas**, 2024 WL 4293349, *3; **Johnson**, 966 A.2d at 540. While trial counsel also stated that he failed to retain an expert to investigate the pregnancy denial syndrome defense and that he was aware of witnesses he could have called to challenge the Commonwealth's evidence that Rizor was pregnant, **id.** at 2, these admissions by themselves would not establish counsel's ineffectiveness absent proof that these witnesses were willing and able to testify for the defense. **Brown**, 196 A.3d at 167.

and order] as a notice of intention to dismiss a PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907, although a hearing was held"). Rizor contends that the "proper standard" for the lower court to have applied was whether she "proved by a preponderance of the evidence that she is entitled to relief under the" PCRA. Appellant's Brief at 25 (citing 42 Pa.C.S. § 9543(a)). Because "the only evidence of record is the testimony of [Rizor] which clearly establishes the necessary elements under the PCRA," Rizor contends that the "lower court's ruling should be overturned outright, or, in the alternative, remanded for further proceedings under the correct standard." *Id.* at 25-26.

This claim lacks merit. A review of the PCRA court's January 16, 2020 opinion stating the court's intention to dismiss Rizor's petition and the court's June 9, 2020 Rule 1925(a) opinion show that the court properly applied the *Pierce* tripartite standard to Rizor's ineffective assistance of counsel claims and found, in accordance with the PCRA statute, that the asserted ineffectiveness did not "undermine[] the truth-determining process such that [her conviction] was unreliable." *See* PCRA Court Opinion, 1/16/20, at 30-31; PCRA Court Opinion, 6/9/20, at 38-39; *see also Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) ("[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the '[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'") (quoting 42 Pa.C.S. § 9543(a)(2)(ii)). Thus, regardless

of the PCRA court's statement in its February 10, 2020 order that it was dismissing based on the absence of any genuine issues of material fact, the lower court engaged in a proper analysis of Rizor's ineffectiveness claims when dismissing her petition.

Having found no merit to any of Rizor's remaining issues following remand from our Supreme Court, we therefore affirm the PCRA court's February 10, 2020 order dismissing her petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/25/2024