503 P.2d 440

**FIRST NATIONAL BANK IN GRAND JUNCTION, a National Banking Association, Plaintiff and Respondent,**

v.

**Ralph OSBORNE and Jim L. Hudson, Defendants and Appellants.**

No. 12804.

Supreme Court of Utah.

Nov. 17, 1972.

Tuckett, J., dissented and filed opinion in which Henriod, J., concurred.

Clinton D. Vernon, Herschel, J. Saperstein, Salt Lake City, for defendants-appellants.

Therald N. Jensen, Price, William H. Nelson, Grand Junction, Colo., L. Robert Anderson, Monticello, for plaintiff-respondent.

ELLETT, Justice:

The defendant Hudson appeals from a directed verdict in favor of the plaintiff bank granted after all of the evidence had been presented to the jury. There is not much dispute in the evidence, and so the question is whether or not reasonable minds could have found contrary to the ruling of the trial judge.

Defendant Osborne was an officer of the Moab National Bank and knew defendant Hudson as a bank customer. He had sold the bank stock owned by one Stoy to Hudson, and on another occasion had told Hudson that the majority stockholder was old and wanted to sell his stock. When Hudson stated that he did not have that much money, Osborne told him that a bank in Grand Junction would lend the money. Osborne asked for a financial statement from Hudson, which was furnished June 2, 1969. The next day Osborne signed a note for $60,000 and sent it together with the financial statement and a Loan Guaranty Agreement ostensibly signed by Hudson to the plaintiff bank, and obtained $60,000 cash.

Hudson does not deny that the signature is his. He says it looks like his signature, but if it is, it does not belong on that paper. He testified positively that he never at any time agreed to be a guarantor for Osborne or for anybody else for $60,000 or any other amount. He has no explanation as to how his signature was procured; but he says it had to be obtained by trick or ruse.

He had bought and cashed certificates of deposit at the Moab National Bank and signed some papers before Osborne in connection therewith. He had made deposits in and written checks on an account in the Moab National Bank, and had once co-signed a note at the bank for a friend of his.

Osborne consented to a default judgment against himself and was not available as a witness at trial or for depositions.

█ The defendant Hudson offered to prove that Osborne had been charged in the Federal Court of Utah with four counts of embezzlement from the Moab National Bank, and on February 5, 1971, had entered a plea of guilty to each count as follows:

Count I Embezzled $15,000 on September 19, 1968
Count II Embezzled 10,000 on March 28, 1969
Count III Embezzled 20,000 on May 8, 1969
Count IV Embezzled 7,500 on October 3, 1968

Hudson also offered to prove that Osborne used the money obtained from the plaintiff to cover up his defalcations.

The court refused to permit the evidence to be given to the jury saying:

I am wondering if that will inflame the jury to the extent that they just, well by golly we're going to find this way regardless, any fellow that will do that will do anything, and which doesn't necessarily follow, you see.

The trial court erred in refusing the tendered proof. If Hudson can be believed, he was imposed upon by somebody, and the logical explanation is that it was by Osborne who so desperately needed the money to cover his peculations, and who could not get the loan without the guaranty of Hudson. The case is civil and not criminal. Osborne had already entered pleas of guilty to the crime of embezzlement and had consented to a default judgment in this case. He would not be hurt by having the truth made known, while the evidence would be very material to Hudson in showing a motive on the part of Osborne to procure his signature by trick or fraud.[1]

█ The defendant Hudson also offered to prove by an independent witness that Osborne had said of Hudson after it was known that the plaintiff would try to collect from Hudson: "I finally was, able to hang one on him. I've been laying for him for some time and I finally got the chance to do it."

1. Rule 55, Rules of Evidence.

The trial court refused the proof on the ground that it was hearsay and was vague. We think the proffer was in the nature of an admission against interest in that it would be admissible against Osborne in case he were sued by Hudson, and also that such statement, if true, would tend to make Osborne an object of hatred, etc.[2] It also was error to refuse this proffered testimony.

The trial judge was of the opinion that Hudson had the burden of showing the specific acts of fraud in the manner in which his signature was obtained. We do not believe that this is a case of fraud at all. It is a case in contract and the plaintiff has the burden of showing that Hudson agreed to be a guarantor for the Osborne note.

When the plaintiff proved the signature on the Loan Guaranty Agreement to be that of Hudson, it made out a prima facie case, and the burden of going forward with evidence would fall upon the defendant Hudson. However, the ultimate burden of showing an agreement is on the plaintiff.

A contract of guaranty is governed by the rules of contract law, and is set out in 38 Am.Jur.2d Guaranty, Section 55, at page 1058, as follows:

The contract of guaranty must be valid in the sense that the requisite elements of a contract exist, that is, there must be proper parties with the required capacity, mutual assent, and consideration. In addition, the guaranty agreement must conform to any formal requirements of the statutes and case law of the appropriate jurisdiction. And even though all of these elements are present, the guaranty is not enforceable if the mutual assent was procured through mistake or imposition practiced upon the guarantor.

Our statute requires that the promise to answer for the debt of another be in writing in order to be enforceable. Section 520 of Corbin on Contracts reads:

There is no disagreement that this requires that there must be inscribed on the memorandum, with the intention thereby to authenticate the document, the name of the party to be charged or the name of his authorized agent or some other symbol used in lieu of a name. It is not sufficient that the party's name appears on the memorandum or document merely to identify him as one of the contracting parties or for some wholly extraneous purpose. It must have been inscribed as an authentication of the contents of the memorandum.

After all of the evidence was in, the court stated:

It appears to me that this, we are making a complicated case I think of some-

---

2. Rule 63(10), Rules of Evidence.

thing that to me is relatively simple. Number 1, did Hudson sign the loan agrement? I think that has been established. Number 2, was any fraudulent misrepresentation made to get him to sign the agreement? That is the other proposition. If so, assuming that there were such, the next is, did the bank, the Plaintiff bank have knowledge thereof or was it put on notice that he was imposed upon for the purpose of obtaining his signature on the loan guaranty agreement. That is all I see to this case. Very simple proposition.

 We think there was a question in this case for the jury to decide. If Hudson was imposed upon to sign a paper which he never intended to sign; or if he did not know his signature was being affixed to the Loan Guaranty Agreement, then there was no contract at all and it would not matter whether the bank was a party to the obtaining of the signature, nor would it matter whether the bank officials were negligent in not checking with Hudson before advancing the money to Osborne.

The judgment is reversed and the case remanded for a new trial. Costs are awarded to the appellant, Hudson.

CALLISTER, C. J., and CROCKETT, J., concur.

1. Moorman v. National Casualty Co. (Ohio App.) 75 N.E.2d 806; 18 A.L.R. 2d 1287.

TUCKETT, Justice (dissenting):

While I do not dissent from the action of the majority in remanding this case for a new trial, I am not in agreement with some of the directions spelled out in the decision of the majority. My first concern is with the proffer of proof made by the defendant Hudson to show that defendant Osborne had entered pleas of guilty to four counts of embezzlement from his employer, Moab National Bank. Default judgment having been entered against the defendant Osborne by the plaintiff herein, there is no issue before us pertaining to that defendant. We have no statute dealing with the particular situation before the court, but the majority rule is to the effect that previous criminal convictions are inadmissible in civil actions.[1] Those jurisdictions which do not follow the majority rule have permitted admissibility in those cases where the convicted criminal seeks to recover the fruits of his crime or to take advantage of certain rights arising out of the crime for which he was convicted.[2] I find no case which would permit one defendant to introduce evidence of a conviction of a co-defendant in an attempt to defeat the claim of a plaintiff.

I am of the opinion that the trial court was correct in its ruling that a statement

2. 18 A.L.R.2d 1300.

made by an independent witness that the defendant Osborne had made the statement "I finally was able to hang one on him . . ." referred to in the majority opinion was inadmissible. While that statement may have been admissible on an issue raised between the defendant Osborne and the defendant Hudson, it is clearly hearsay as to the defendant Hudson and the plaintiff in these proceedings. If the statement amounts to an admission against interest, the admission is binding only on Osborne and cannot have any probative value as to Hudson's defense. It should be noted that the statement was not made in the presence of the plaintiff or any of its officers or employees.

The majority opinion states that this is not a case of fraud, but it should be remembered that Hudson does not claim that the signature on the guaranty contract is not his but that his signature was fraudulently obtained by trick, ruse, or other artifice. Hudson has the burden of proving that allegation. I do not believe this court should say that one who sues upon a written contract must show not only that the contract was signed by the opposing party but that he must go further and show that the opposing party entered into the contract freely, voluntarily or without mental reservation.

HENRIOD, J., concurs in the dissenting opinion of TUCKETT, J.