526 A.2d 349

Frank R. HEDDINGS and Sandra J. Heddings,

v.

John STEELE and Edith Steele and Mack Gatz (Two Cases).

Appeal of John STEELE and Edith Steele.

Appeal of John and Edith STEELE, Guardian Heidi and Jason Gatz, Betty and Joseph Gatz.

Supreme Court of Pennsylvania.

Submitted Dec. 2, 1986.

Decided May 29, 1987.

Gary T. Harris, Williamsport, for appellants.

Brett O. Feese, Montoursville, for Mack Gatz.

W. David Marcello, Williamsport, for Betty and Joseph Gatz.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellants, John and Edith Steele, appeal by allowance a Superior Court order which affirmed the Court of Common

Pleas of Lycoming County. Appellants claim that the trial judge abused his discretion by allowing hearsay testimony into evidence in a custody matter pursuant to a previously unrecognized statement against social interest exception to the hearsay rule. We agree with appellants that this proposed exception does not enjoy the requisite indicia of reliability to qualify as a hearsay exception in this Commonwealth. We affirm the custody order of Common Pleas, however, as there is sufficient other evidence on this record that the trial judge acted properly in awarding custody to appellees, Joseph and Betty Gatz. We therefore affirm Superior Court's order.

On October 12, 1982, Janet Gatz, mother of two minor children, Heidi M. Gatz and Jason J. Gatz, died as a result of stab wounds inflicted by her husband, Mack C. Gatz. Mack Gatz pleaded guilty to the homicide and is currently serving a sentence of incarceration. After the arrest of Mack Gatz, the children were taken to the home of Janet's parents, John and Edith Steele, appellants herein. Numerous members of the paternal and maternal families filed petitions for custody in Lycoming County Common Pleas. Following the withdrawal of two parties to the action, the remaining litigants were appellants John and Edith Steele and Mack Gatz's sister and brother-in-law, Frank and Sandra Heddings. A hearing was held in March and April of 1983. On May 12, 1983, Common Pleas awarded primary custody of the children to the Heddings with limited visitation rights accorded the Steeles.

On September 28, 1983, a motion to change custody from the Heddings family to the Steele family was filed after the Heddings experienced substantial difficulty in meeting their obligations with respect to the custody of the children. The paternal grandparents, Joseph and Betty Gatz, appellees herein, appeared at the November 7, 1983 hearing and expressed an interest in the custody proceedings. The trial court indicated that, upon the filing of appropriate petitions, he would reconsider the custody issue. Appellees filed a petition to adopt the children on December 14, 1983. At-

tached to the appellees' petition for adoption was Mack Gatz's statement indicating his consent to the proposed adoption. The court indicated to the parties that if the Gatzes' petition for adoption was denied, the court would also consider the petition as one for custody of the children. Common Pleas granted the parties' motions that it consider the evidence and findings from the hearings in May and April of 1983. Additional testimony was then taken in April of 1984. Common Pleas, on May 24, 1984, then issued its second opinion and order denying the Gatzes' petition for adoption but awarding primary custody to Joseph and Betty Gatz. Visitation rights were again accorded the Steeles. Superior Court affirmed.

At the Common Pleas hearings, seven witnesses testified to statements allegedly made by Janet Gatz regarding incestuous contact with her father, John Steele. Asserting that the statements were so contrary to Janet Gatz's "social interest" that the statements would not have been made if not true, Common Pleas accepted the hearsay testimony into evidence. The trial judge found the appellants generally fit and proper parties to seek custody "except for the Court's concerns regarding sexual immorality stated later herein." Common Pleas slip op., May 24, 1984, at 10. The court then found that appellant John Steele engaged in sexual intercourse with his daughter on several occasions while Janet was in her minority. Although there was no evidence that John Steele ever accosted his granddaughter Heidi Gatz, the Common Pleas court considered this "evidence" of her father's incest with the children's mother, Janet Gatz, as a factor weighing in favor of precluding appellants from enjoying permanent custody of the children. *Id.* at 12. Indeed, it is plain the court relied on it and ignored the other evidence on this issue which could have justified the same result. Superior Court, citing a number of guarantees of trustworthiness surrounding the damning hearsay statements of Janet Gatz, adopted the statement against social interest exception to the rule against hearsay and affirmed the judgment of Common Pleas. We granted allowance of appeal to examine this particular exception to

the rule against hearsay. We now reject it but, exercising the well recognized power of an appellate court to draw its own inferences from the evidence in custody cases, we nevertheless affirm Common Pleas award of custody to appellees.[1]

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. *Carney v. Pennsylvania R.R. Co.*, 428 Pa. 489, 492–93, 240 A.2d 71, 73 (1968); *Whitfield v. Reading Co.*, 380 Pa. 566, 570, 112 A.2d 113, 115 (1955). *See also* 5 Wigmore, *Evidence* § 1361 (Chadbourn rev. 1974); 8 Standard Pennsylvania Practice 2d § 49:19 (1982). A hearsay statement lacks guarantees of trustworthiness fundamental to the Anglo-American system of jurisprudence. Perhaps such a statement's most telling deficiency is it cannot be tested by cross-examination. According to Dean Wigmore, cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, *supra,* § 1367. Nor is the declarant under oath when the out-of-court statement is uttered. This court has long recognized the oath requirement as a further assurance of reliability. *Commonwealth v. Stewart,* 1 Serg. & Rawle 342, 344 (1815); *Longenecker v. Hyde,* 6 Binn. 1, 2 (1813). Out-of-court declarations also deprive the trier of fact of an opportunity to examine the demeanor of the declarant. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 495–496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951). Moreover, an in-court declarant may be impressed with the solemnity of the proceeding and may be reluctant to lie in the face of the party against whom the statement is directed. Fed.R.Evid. Art. VIII, Hearsay, "Introductory Note: The Hearsay Problem," advisory committee's note, *reprinted in* 56 F.R.D. 183, 288 (1973). The confrontation clauses of the federal and state constitutions, U.S. Const. amend. VI; Pa. Const. art. I, § 9, are manifestations of these beliefs and attitudes.

1. The other evidence lacks the shock value of the mother's out-of-court declarations on incest; however, it is plain that Common Pleas could have properly exercised its discretion in holding for the Gatzes without the use of the inadmissible evidence.

This Court has long adhered to the principle that the use of hearsay evidence is to be discouraged, and our policy against its use is generally recognized as particularly strong.[2] As stated by Mr. Justice Musmanno:

The primary object of a trial in our American courts is to bring to the tribunal, which is passing on the dispute involved, those persons who know of their own knowledge the facts to which they testify. If it were not for this absolute *sine qua non,* trials could be conducted on paper without the presence of a single flesh and blood witness. However, with such a pen-and-ink procedure, there would be no opportunity to check on testimonial defects such as fallacious memory, limited observation, purposeful distortions, and outright fabrication. The great engine of cross-examination would lie unused while error and perjury would travel untrammeledly to an unreliable and often-tainted judgment.

*Johnson v. Peoples Cab. Co.,* 386 Pa. 513, 514–15, 126 A.2d 720, 721 (1956). To insure a party the guarantees of trustworthiness resulting from a declarant's presence in court, a proponent of hearsay evidence must point to a reliable hearsay exception before such testimony will be admitted. *Carney v. Pennsylvania R.R. Co., supra,* 428 Pa. at 492–93, 240 A.2d at 73. *See also Commonwealth v. Wright,* 455 Pa. 480, 484–85, 317 A.2d 271, 273 (1974). With these principles in mind, we now turn to the statement against social interest advanced below as a new exception to the hearsay rule in Pennsylvania.

Under the law of this Commonwealth, declarations against pecuniary or proprietary interest are admissible as a hearsay exception. *See e.g., Beardsley v. Weaver,* 402 Pa.

**2.** For example, hearsay evidence alone will not support a finding of an administrative agency in this Commonwealth. *See, e.g., Jenkins v. Unemployment Compensation Board of Review,* 78 Pa.Commonwealth Ct. 332, 467 A.2d 648 (1983) (uncorroborated hearsay evidence insufficient to support finding of Unemployment Compensation Board of Review); *Voitek TV Sales & Service v. Workmen's Compensation Appeal Board,* 71 Pa.Commonwealth Ct. 475, 455 A.2d 265 (1983) (hearsay may not be the exclusive basis for a grant of workers' compensation benefits).

130, 132, 166 A.2d 529, 530 (1961); *Rudisill v. Cordes*, 333 Pa. 544, 549–50, 5 A.2d 217, 219 (1939). Such statements are deemed reliable as "[p]eople are apt to speak freely and falsely in their own favor but are reluctant to speak falsely to their pecuniary or proprietary detriment." Jefferson, *Declarations Against Interest, An Exception to the Hearsay Rule*, 58 Harv.L.Rev. 1, 8 (1944). This Court has recently abandoned the historical limitation to statements against one's pecuniary or proprietary interest to incorporate statements against one's penal interest. *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975) (Opinion Announcing the Judgment of the Court). Superior Court has now attempted to extend the against interest exception to also include statements against social interest.[3]

**3.** Judge Wickersham, writing on behalf of Superior Court, defines the exception as follows:

> Human nature being what it is, people are not likely to concede the existence of facts which would make them objects of social disapproval in their community unless the facts are true.
>
> . . . .
>
> In other words, we find a declaration against interest to be an out-of-court statement that was made by a non-party who has since died or has become unavailable as a witness; that concerned facts of which declarant had personal knowledge; that involved an interest (whether pecuniary, proprietary, penal or social) of declarant that was so palpable that it would naturally have been present in the declarant's mind; and finally, that was against such interest.

*Heddings v. Steele*, 344 Pa.Superior Ct. 399, 412–13, 496 A.2d 1166, 1173–74 (1985). Judge Wickersham's view is not without support by comment, case law and statute:

Model Code of Evidence Rule 509(1) (1942); Unif. R. Evid. 804(b)(3) (1974), 13A U.L.A. 786–87 (1986).

D. Binder, *Hearsay Handbook* §§ 29.04, 29.05 (2d ed. 1983); Jefferson, *Declarations Against Interest, An Exception to the Hearsay Rule*, 58 Harv.L.Rev. 1, 39 (1944); Morgan, *Declarations Against Interest*, 5 Vand.L.Rev. 451, 475 (1952).

Ark., Ark.Stat.Ann. § 28–1001 (1979); Cal., Evid. Code § 1230 (West 1966); Kan., Kan.Stat.Ann. § 60–460(j) (Supp.1986); Me. M.R. Evid. 804(b)(3); Mont., Mont.R.Evid. 804(b)(3); Nev., Nev.Rev.Stat. § 51.-345 (1986); N.J., Rules of Evidence, N.J.S.A. 2A:84A, Rule 63(10); N.D., N.D. R. Evid. 804(b)(3); Tex., Tex. R. Evid. 803(24); Wis., Wis.Stat.Ann. § 908.045(4) (West 1975).

*State v. Alcorn*, 7 Idaho 599, 64 P. 1014 (1901); *State v. Parrish*, 205 Kan. 178, 468 P.2d 143 (1970); *Timber Access Ind. Co. v. U.S. Plywood-Champion*, 263 Or. 509, 503 P.2d 482 (1972). The following decisions

■ We are not persuaded that the exception enjoys the requisite indicia of reliability to qualify as an exception to the rule against hearsay in this Commonwealth. Instead, we adopt the position taken by the Second Circuit in *United States v. Dovico,* 380 F.2d 325 (2d Cir.1967), *cert. denied,* 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967), and the drafters of the Federal Rules of Evidence rejecting this extension. We might agree with Judge Wickersham's psychological analysis on the facts of this case. Certainly it is easy to see why a statement that "I had sex with my father" is against a woman's interest in our society.[4]

In *Dovico,* the Second Circuit approved exclusion of the hearsay statement of one Gangi, a federal prisoner, that he had acted alone in committing a drug offense for which both he and the defendant Dovico had been convicted. The *Dovico* court first noted that this statement was not against Gangi's penal interest as he had already been convicted. The court also rejected the argument that the statement should have been admitted as a statement against Gangi's social interest:

The case demonstrates the possibly unmanageable nature of a "social interest" exception. Appellant asserts that both the admission of guilt and the withholding of the information of Dovico's innocence were against Gangi's social interest. But this assertion leaves many questions unanswered. What is the relevant community: Gangi's group in prison; the whole prison; prison gener-

merely rely upon each particular state's codified rule of evidence: *Marriage of Sarsfield,* 671 P.2d 595 (Mont.1983); *First Nat'l. Bank v. Osborne,* 28 Utah 2d 387, 503 P.2d 440 (1972); *Muller v. State,* 94 Wis.2d 450, 289 N.W.2d 570 (1980).

**4.** Appellant also argues, based on subtle discrepancies in the record, that the testimony should not have been accepted into evidence. Seven witnesses testified that appellant John Steele engaged in incestuous relations with his daughter Janet. Three of the seven testified that the alleged acts took place in the bedroom. N.T., Vol. I, 133, 171, 180. Two of the seven indicated the contact took place in the barn. N.T., Vol. I, 208; N.T., Vol. IV, 978. Two made no statement on the location of the improper contact. N.T., Vol. I, 193–202; Vol. II, 443–463. These discrepancies, however, would go to the weight of the evidence and not admissibility.

ally; his friends outside prison; his community outside prison; the reasonable community, etc.? Because Dovico and Gangi had been friends, and also because Gangi might have been attempting to dispel the illusion that he was cooperating with the government, was the statement so clearly against his social interests as to make it reliable? Depending on the community selected and on the motivation of Dovico's discerned, the declaration could be both for and against social interest. Many difficulties would beset such a broadening of the exception. It would be difficult to define any reliable "against social interest" exception, and surely we could not recognize one so amorphous as that sought here, without a complete abandonment of the hearsay rule.

*Dovico, supra,* at 327 n. 4. The House Committee on the Judiciary relied upon the *Dovico* court's reasoning in rejecting the proposed statement against social interest exception to the Federal Rules of Evidence. House Comm. on Judiciary, Fed.Rules of Evidence, H.R.Rep. No. 650, 93d Cong., 1st Sess., 16 (1973), *reprinted in* 1974 U.S.Code & Admin. News 7075, 7089.

The *Dovico* opinion aptly illustrates the slippery nature of the proposed exception for statements against social interest. Its use would require a trial judge to first determine the habits, customs and mores of the community within which the declarant lives. An utterance made by a member of a motorcycle gang while in the company of his peers does not tend to make the declarant an object of hatred, ridicule or disgrace in his community whereas the identical statement proffered by a member of this Court may subject him to social disapproval among his brethren. This difficulty does not arise when the statement against pecuniary/proprietary interest and the statement against penal interest are employed. The statement "it was not your fault" by a tort victim is *a fortiori* against his pecuniary interest. *See, e.g., Rudisill v. Cordes, supra,* 333 Pa. at 546, 5 A.2d at 219 (statement by pedestrian victim that accident not automobile driver's fault). To determine what is against one's

penal interest, a trial judge need only consult the Crimes Code, 18 Pa.C.S. §§ 101–9183, which defines criminal conduct.

In the present case, Common Pleas accepted and considered testimony which it felt had the guarantees of trustworthiness necessary to obviate the hearsay rule in determining that appellants are ill-suited for custody of the minor children. That conclusion is not unreasonable on this record. However, it would not be limited to the peculiar facts of this case, but creates a new general principle which would materially impact the means by which the law seeks truth. This principle must therefore be judged as a universal. So judged, it fails.

■ Mindful of the fact that these proceedings have left the status of the children long unresolved, we have examined the record without regard to the objectionable hearsay. The scope of review of an appellate court in custody matters is of the broadest type. We are not free, however, to nullify the factfinding function of the hearing judge. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 236, 478 A.2d 800, 806 (1984). We are satisfied that the trial court's award of custody of these children to appellees was and is in their best interest. That conclusion can stand without the necessity of considering the charge of incest levied from beyond the grave by the children's late mother against her father. This other evidence supports the hearing court's finding that the Steeles' unstructured family arrangement and permissive attitudes would work a severe disservice to the children whereas the Gatzes' more structured environment would create an atmosphere conducive to healthy development. Common Pleas slip op. *supra* at 10. The Steeles are both diabetic and overweight and would be less likely than the Gatzes to address and correct Heidi's weight problem. *Id.* at 11. The Gatzes are more apt to cooperate in facilitating the Steeles' visitation rights than the Steeles would cooperate with the Gatzes. *Id.* at 13. Heidi is in need of remedial instruction with her schoolwork; only the Gatzes have shown an interest by contacting

Heidi's teacher to discuss her problems. *Id.* at 13–14. Betty Gatz has made a substantial effort to improve the children's grooming habits. *Id.* at 15. Our review of the record leads us to conclude that the interests and welfare of the children would be best served by leaving them in the custody of the Gatzes.

The order of Superior Court is therefore affirmed.

NIX, C.J., and McDERMOTT, J., file concurring and dissenting opinions.

NIX, Chief Justice, concurring and dissenting.

I agree with the majority that the statement against interest exception to our hearsay doctrine should not be expanded to encompass declarations against social interest. I also understand the majority's concern for an expeditious resolution of this matter. In view of the fact that the trial court's award of custody was based in part on inadmissible evidence, however, I would remand the cause to that court for a reevaluation of the children's best interests. This decision will affect the entire course of these minors' lives, as well as the lives of those who are interested in them. It is in my judgment unwise, regardless of how well meaning, for this Court to make that decision relying solely on a cold record. I am therefore constrained to dissent from the majority's mandate.

McDERMOTT, Justice, concurring and dissenting.

I join the majority, and write to emphasize that the determination of credibility by a trier of fact is the ultimate, pragmatic, epistemological canon of our law.

What can only be known through the senses and intellect of a person is a legally unacceptable premise, unless it is found credible, is believed and accepted by the trier of fact, under the different burdens of proof imposed in particular cases. The accepted credibility of a witness is the sole source of a fact derived through the senses of a person.

The testimony of a witness may be credible because it is possible, internally and circumstantially consistent, rational and probable; but to premise further consideration it must also be believed. That is, along with its credible content it must be filtered through the observation and attention of the trier of fact, under the great canon that they are to use all the experience of their lives in measuring the credibility and reliability of a witness.

We have said, times out of mind, that what the trier of fact sees and hears is the basis of all judgment. He need not believe any or all of the witnesses. What testimony he accepts is the only foundation of a judgment. *See generally, Morrissey v. Commonwealth Dept. of Highways*, 424 Pa. 87, 225 A.2d 895 (1967).

The content of credible testimony is examined along with the human agency that presents it. Unless the content can be reconciled beyond love, hate, fear, hope, interest and all the human things that tend to cloud the senses, twist the memory, fire the imagination, or tempt to mendacity, the testimony is not accepted. Unless what was offered is accepted, however true it may be in any other context, it is not legally true. *See Shearer v. Insurance Co. of North America*, 397 Pa. 566, 156 A.2d 182 (1959).

The power to determine facts from human testimony is a terrible power. The more so because our tools are few. Those that we have are mostly exclusionary. Hearsay evidence is first in the list of excluded evidence. Hearsay not only eludes oath, cross examination, and the right to face accusers, it evades the single most important consideration in the truth determining process; the witness is not seen nor heard by the trier of fact. 5 Wigmore, Evidence §§ 1362, 1364 (Chadbourn rev. 1974).

All the trier of fact hears is that an absent witness made a statement. He can believe that a statement was made. Whether he would have believed the witness, in this case the deceased, if she spoke in his presence, he cannot know. To substitute, not only for admissibility, but for its truth, the statement of an absent witness, because that statement

is allegedly against her social interest, is a leap past our only test, and a leap into the dark.

I would join with the Chief Justice in remanding this case back to be reheard absent the damning hearsay.*

* The opinion in this case in the Superior Court was written by the able and learned Judge Wickersham. Judge Wickersham has resigned from the bench to follow other endeavors. His excellent opinion here is testimony to the gap he will leave in our collective learning and experience.