IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roschanda Jackson                         :
                                          :
          v.                              : No. 1473 C.D. 2023
                                          : Submitted: August 8, 2025
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing,               :
                                          :
                  Appellant               :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE MATTHEW S. WOLF, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                           FILED:  October 30, 2025


          The Commonwealth of Pennsylvania, Department of Transportation,
Bureau of Driver Licensing (DOT) appeals from the November 15, 2023 order of
the Montgomery County Court of Common Pleas (trial court) that sustained
Roschanda Jackson's (Licensee) statutory appeal and rescinded the suspension of
her driver's license for refusing to submit to a chemical test.  DOT contends that the
trial court erred and abused its discretion by holding that the arresting officer did not
have reasonable grounds to believe that Licensee was driving under the influence
(DUI).  Upon review, we reverse the trial court's order and remand for further
proceedings as outlined below.

# I. Background

On February 22, 2023, DOT mailed Licensee an Official Notice of Suspension of her operating privilege (Suspension Notice) as authorized by Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547, and an Official Notice of Disqualification (Disqualification Notice) of her commercial driver's license (CDL) as authorized by Section 1613 of the Vehicle Code for refusing chemical blood testing. *See* Original Record (O.R.) at 5-8.[1] Licensee timely appealed both notices. *Id*. at 2-8.

The trial court held a hearing. DOT presented the testimony of Sergeant Timothy Lynch (Sergeant Lynch) and Officer Christopher Hens (Officer Hens) of the Upper Moreland Township Police Department. DOT entered Exhibit C-1 into evidence, which included a certified copy of the Disqualification Notice, Licensee's certified driving history, and side one of the DL-26B form.[2] Supplemental Original Record (S.O.R.) at 2-17; *see* Reproduced Record (R.R.) 68a-83a; *see also* R.R. at 33a-34a. DOT also offered Sergeant Lynch's body camera video, which the trial court admitted. S.O.R., USB Flash Drive; *see* R.R. at 45a. Licensee represented herself and testified.

Sergeant Lynch testified that, on the evening of November 25, 2022, he was on patrol when a woman (Witness) called 911 to report a suspected DUI. Sergeant Lynch testified that his body camera recorded his investigation, commencing when he met the Witness on the roadway and ending following his arrest of Licensee. The trial court viewed the body camera video, which is 45

---

[1] For ease of reference, the Original Record and Supplemental Original Record page numbers reflect electronic pagination.

[2] DOT did not include certified documents relevant to the Suspension Notice.

minutes and 5 seconds in length, at the hearing. Sergeant testified that the video accurately depicted what happened that night.

Sergeant Lynch testified, and the body camera video showed, that the Witness reported seeing a vehicle driving in the lane of oncoming traffic and then turning down a private driveway on Terwood Road.[3] Immediately after receiving the Witness's report, Sergeant Lynch located Licensee's vehicle at the end of the identified driveway. R.R. at 42a. Sergeant Lynch approached the vehicle to find Licensee laying down on the front seats. Sergeant Lynch asked Licensee for her license and registration. Sergeant Lynch testified that Licensee was uncooperative with him insisting she was resting and not driving. Sergeant Lynch called for assistance and asked Licensee to submit to standardized field sobriety tests, which Officer Hens administered.

The tests included the Horizontal Gaze Nystagmus (HGN), the One-Legged-Stand, and Walk-and-Turn. Sergeant Lynch did not observe the HGN test being administered and his body camera video did not sufficiently record it. As for the other two tests, Licensee demonstrated balance on the One-Legged-Stand and Walk-and-Turn test, but she did not adhere to the instructions provided. R.R. at 32a. On the One-Legged-Stand test, Licensee "counted 1, 2, etc. until she reached 30 rather than 1001, 1002, etc.," and she did not keep her arms at her side as Officer Hens had directed. Trial Court Op., 2/20/24, at 3-4 (italics omitted); *see* S.O.R., USB Flash Drive; R.R. at 32a. On the Walk-and-Turn test, Licensee walked in a

_____

[3] DOT did not call the Witness to testify at the hearing. The trial court noted that it did not consider the Witness's statements on the video for the truth of the matter asserted but instead considered the video for the sole purpose of determining why the arresting officers investigated, and whether reasonable grounds existed to request Licensee submit to chemical testing.

straight line, but she did not walk heel-to-toe as instructed and demonstrated by Officer Hens. *See* Trial Court Op., at 4; S.O.R., USB Flash Drive; R.R. at 32a.

Upon reviewing the mixed results, Sergeant Lynch decided to give Licensee "the benefit of the doubt" by asking her to submit to a preliminary breathalyzer test (PBT), to which she agreed. S.O.R., USB Flash Drive; R.R. at 32a. The first PBT did not yield a result; the second PBT yielded .122, which is over the legal limit. R.R. at 59a-60a. Regarding the failure of the first PBT, Sergent Lynch testified that this typically occurs when the subject does not provide enough air supply. After the second PBT showed a positive indication of alcohol, Sergeant Lynch placed Licensee under arrest for DUI. Sergeant Lynch transported Licensee to the police barracks. Sergeant Lynch identified the DL-26B form included in Exhibit C-1 as the implied consent warnings that he read verbatim to Licensee. *Id*. at 34a, 71a. After the warnings were read, Sergeant Lynch testified that Licensee refused to submit to chemical testing and refused to sign the form. *Id*. at 34a. On cross-examination, when asked if he smelled alcohol, Sergeant Lynch testified: "No, not at first . . . ." *Id*. at 36a. He confirmed that there was no mention of the smell of alcohol by any officer on the video. *Id*.

Licensee testified that the night of the incident was Thanksgiving. R.R. at 45a. She was driving home to Souderton and was not familiar with the Willow Grove area. *Id*. at 46a. Licensee testified that a woman (presumably the Witness) let her know that she was driving "in the wrong lane." *Id*. Licensee acknowledged that it was "quite possible" that she was in the wrong lane, which prompted her to stop and rest. *Id*. Licensee testified that she "pulled . . . into a park[,] . . . went up a hill," and parked in what she thought was a public parking lot to rest. *Id*. at 46a-47a. She testified that she drives a school bus for a living and does not drink but

4

admitted to having one glass of wine earlier that evening. *Id*. Licensee further testified that she took the keys out of the ignition and her engine was off when Sergeant Lynch approached her vehicle. According to Licensee, Sergeant Lynch was very aggressive, and she felt intimidated. *Id*. at 47a, 50a. Licensee testified that she completed the field sobriety tests and the PBT. She testified that the blood test was the last test requested and acknowledged that Sergeant Lynch read a document to her in the patrol car. *Id*. at 50a-51a. On cross-examination, Licensee admitted she refused to take the blood test. *Id*. at 52a-53a.

Officer Hens testified that he administered the field sobriety tests to Licensee. He testified that Licensee "did good" on the One-Legged-Stand test. R.R. at 56a. On the Walk-and-Turn test, he testified there were a few times where she showed signs of intoxication. *Id*. As for the PBT, he testified the first test did not provide an output. *Id*. at 57a. He explained that "sometimes the machine does not work properly. If the subject gives a bad test – either sucks in or blows out and it's only a minimal amount of air, so the first one didn't read and the second one [read] .122," which is over the legal limit. *Id*. On cross-examination, Officer Hens acknowledged there could be other reasons why a PBT may not work properly. *Id*. at 58a-59a.

On November 15, 2023, the trial court entered an order by checking a box on a standard order form that stated the "appeal filed . . . is . . . SUSTAINED and the suspension shall be RESCINDED." R.R. at 84a (bolded emphasis omitted). DOT sought reconsideration, which the trial court denied. DOT then filed a timely appeal in this Court. In response to the appeal, the trial court entered an opinion in support of its order.

Therein, the trial court identified the Disqualification Notice as the basis of the appeal and did not mention the Suspension Notice. *See* Trial Court Op., at 5. Based on the testimony and evidence presented at the hearing, the trial court found Licensee credible in her testimony that she was unfamiliar with the area, it was dark, and she pulled off the road into what she thought from appearances was a park or public space to sleep because she was tired. The trial court rejected the HGN results because Sergeant Lynch did not observe the test being administered, his body camera video did not sufficiently record it, and he did not rely upon this test in forming his opinion. As for the other field sobriety tests, the trial court found that Licensee satisfactorily completed the tests because she did not sway and maintained her balance. The trial court rejected the PBT as not reliable. The trial court explained that there was no evidence regarding the breathalyzer's age, the make or model, or whether the device was calibrated. The trial court relied on Officer Hens' testimony on cross-examination that there are numerous reasons a breathalyzer may not work properly. Ultimately, the trial court focused on Licensee's clear speech; the lack of bloodshot eyes or the smell of alcohol on her breath; the satisfactory completion of the two field sobriety tests; and the unreliability of the PBT test results. Based on these factors, the trial court concluded that Sergeant Lynch did not have reasonable grounds to believe that Licensee had operated her vehicle while under the influence. The trial court also found that Sergeant Lynch placed Licensee under arrest and read her the DL-26B form, notifying her that, if she refused to submit to a chemical test, her "operating privilege will be suspended." Trial Court Op., at 4; *see* S.O.R. at 5. Licensee refused. *Id*. Having determined Sergeant Lynch did not have reasonable grounds to suspect DUI, the trial court sustained Licensee's statutory appeal and rescinded her license suspension.

6

## II. Issues

On appeal,[4] DOT argues that substantial evidence clearly shows that Sergeant Lynch had reasonable grounds to suspect that Licensee was DUI to support the request for chemical testing, and the trial court erred in concluding otherwise. DOT asks this Court to reinstate the one-year suspension of Licensee's operating privilege imposed under Section 1547 of the Vehicle Code.[5]

## III. Discussion

Section 3802(a)(1) of the Vehicle Code states:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa. C.S. §3802(a)(1) (emphasis added). To sustain the suspension of a licensee's operating privilege under Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547, or disqualification of commercial driving privilege under Section 1613 of the Vehicle Code, 75 Pa. C.S. §1613, DOT has the burden of proving that the licensee:

---

[4] Our review in a license suspension or disqualification case "is limited to determining whether the trial court's findings are supported by substantial evidence, errors of law have been committed, and the trial court's determinations demonstrate an abuse of discretion." *Palitti v. Department of Transportation, Bureau of Driver Licensing*, 331 A.3d 96, 105 (Pa. Cmwlth. 2024). Whether reasonable grounds exist to believe that a licensee was DUI is subject to plenary review. *Id.*

[5] By order dated November 18, 2024, we precluded Licensee from filing an appellate brief after she failed to comply with our prior order directing her to do so.

> (1) was arrested for [DUI] by a police officer who had *reasonable grounds* to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under [the] influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999) (emphasis added); *accord Palitti v. Department of Transportation, Bureau of Driver Licensing*, 331 A.3d 96, 105 (Pa. Cmwlth. 2024).

In determining whether an officer had reasonable grounds, we "'consider the *totality of the circumstances*, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police.'" *Bold v. Department of Transportation, Bureau of Driver Licensing*, 320 A.3d 1185, 1201 (Pa. 2024) (quoting *Banner*, 737 A.2d at 1207) (emphasis added). "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner*, 737 A.2d at 1207. Although "there is no set list of behaviors that a person must exhibit for an officer to have reasonable grounds for making an arrest, case law has provided numerous examples of what this Court has accepted as reasonable grounds in the past, *e.g.*, staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol." *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009).

The test for whether a police officer has "reasonable grounds is not very demanding[,] and the police officer need not be correct in his belief that the motorist

8

had been driving while intoxicated." *Sisinni v. Department of Transportation, Bureau of Driver Licensing*, 31 A.3d 1254, 1259 (Pa. Cmwlth. 2011); *accord Yencha v. Department of Transportation, Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). "Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void." *Yencha*, 187 A.3d at 1186.

"Further, . . . it is not necessary for an arresting officer to actually observe the licensee operating the vehicle, nor does the existence of reasonable alternative conclusions bar the arresting officer's actual belief from being reasonable." *Schlag v. Department of Transportation, Bureau of Driver Licensing*, 963 A.2d 598, 603 (Pa. Cmwlth. 2009); *accord Yencha*, 187 A.3d at 1045. "[A] police officer's reasonable grounds can be based on information received from a third party." *Schlag*, 963 A.2d at 603; *see Yencha*, 187 A.3d at 1045 (holding that information from a passerby and another driver could be used to assess the officer's state of mind regarding the reasonableness of his belief). Although it is well settled that hearsay is generally inadmissible,[6] "out-of-court statements are admissible to

---

[6] As this Court has explained:

> Under Rule 802 of the Pennsylvania Rules of Evidence, hearsay is inadmissible evidence unless it meets an established exception. Pa.R.E. 802. Rule 801(c) of the Rules of Evidence defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). In other words, "[h]earsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted." *Heddings v. Steele*, . . . 526 A.2d 349, 351 ([Pa.] 1987). Accordingly, when an out-of-court statement is offered for a purpose other than to prove the truth of the matter asserted, the statement is not hearsay.

**(Footnote continued on next page…)**

prove an officer's state of mind to establish the officer had reasonable grounds to believe an individual operated a vehicle." *Palitti*, 331 A.3d at 106; s*ee Schlag*, 963 A.2d at 604 (officer's reasonable belief was supported by information received from a complainant who followed a vehicle involved in a hit-and-run accident, confronted the driver, and reported signs of intoxication).

"[A]n officer's reasonable belief that the licensee was [DUI] will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief." *Yencha*, 187 A.3d at 1045 (citation and quotations omitted). Further, courts appropriately defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances. *Id*.; *see Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005) (holding "a police officer may rely upon his experience and personal observations to render an opinion as to whether a person is intoxicated"). "Whether reasonable grounds exist is a question of law reviewable by a court on a case[-]by[-]case basis." *Banner*, 737 A.2d at 1207.

Here, based on the evidence presented, the trial court found that Licensee did not exhibit glassy or bloodshot eyes or omit the smell of alcohol. Her speech was clear and coherent during the investigation. The trial court also found that Licensee credibly testified that she was not familiar with the area, it was dark, and she pulled off the road in what she believed to be a park or public space to sleep because she was tired. In addition, the trial court found that Licensee satisfactorily completed the field sobriety tests by demonstrating steadiness. Based on her

---

*Palitti,* 331 A.3d at 105-06.

10

performance, the officers expressed doubt as to whether Licensee was DUI, which prompted the PBT.

However, notwithstanding the foregoing, the record contains other indicia supporting Sergeant Lynch's reasonable belief that Licensee was DUI. Sergeant Lynch testified to several independent factors, which were supported by the body camera video, which led to his determination that Licensee was DUI. Sergeant Lynch testified that he responded to a 911 call for suspected DUI. The Witness reported seeing a vehicle driving into oncoming traffic, exchanged words with the driver, and then watched the driver turn down a long driveway. The Witness was called back to the scene and positively identified Licensee as the driver. When questioned by Sergeant Lynch, Licensee initially denied encountering anyone on the road but then admitted that someone told her she was driving in the wrong lane, which prompted her to pullover and rest. S.O.R., USB Flash Drive. Licensee's own testimony corroborates this. R.R. at 46a-47a.

In addition, Sergeant Lynch found Licensee parked at the end of a driveway, which Licensee mistakenly believed was a public lot or park, not a private residence. Licensee was uncooperative with Sergeant Lynch during the investigation, insisting she was not DUI because the vehicle's ignition was off, and she was not driving when Sergeant Lynch approached her vehicle. As for the field sobriety tests, although Licensee maintained her balance during the One-Legged-Stand and Walk-and-Turn tests, she did not adhere to the instructions provided. The positive reading on the second PBT was the final factor leading Sergeant Lynch to suspect that Licensee was DUI. Although the trial court rejected the PBT as unreliable, the PBT supported Sergeant Lynch's belief that Licensee was DUI and should be placed under arrest. *See* Section 1547(k) of the Vehicle Code, 75

11

Pa. C.S. §1547(k) ("The sole purpose of this [PBT] is to assist the officer in determining whether or not the person should be placed under arrest.").

Based upon the foregoing observations, his experience, and information provided by the Witness, Sergeant Lynch reasonably believed Licensee was DUI. "Though perhaps none of these factors individually would be sufficient to show reasonable grounds, their cumulative impact allows a reasonable officer to conclude that Licensee operated his vehicle under the influence of alcohol." *Koutsouroubas v. Department of Transportation, Bureau of Driver Licensing*, 61 A.3d 349, 353 (Pa. Cmwlth. 2013). Although we recognize that there was mitigating evidence, as found by the trial court, "the existence of reasonable alternative conclusions [does not] bar the arresting officer's actual belief from being reasonable." *Schlag*, 963 A.2d at 603. Thus, we conclude that the totality of the circumstances supports the conclusion that a reasonable person in Sergeant Lynch's position, viewing the facts and circumstances as they appeared to him at the time, could conclude that Licensee drove her car while under the influence. *See Parrish v. Department of Transportation, Bureau of Driver Licensing*, 318 A.3d 1025, 1030 (Pa. Cmwlth.), *appeal denied*, 330 A.3d 1250 (Pa. 2024) (holding it is appropriate to defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances); *Yencha*, 187 A.3d at 1045 (same). We, therefore, conclude that the trial court erred in determining that Sergeant Lynch did not have reasonable grounds to request chemical testing.

Despite this conclusion, our inquiry does not end here. In addition to establishing reasonable grounds, to sustain a suspension of operating privilege under Section 1547 of the Vehicle Code or a disqualification of commercial driving

privilege under Section 1613 of the Vehicle Code, DOT needed to prove that Licensee was warned of the consequences of refusal. *See Banner*, 737 A.2d at 1206; *Bergenstock v. Department of Transportation, Bureau of Driver Licensing*, 311 A.3d 1201, 1205-07 (Pa. Cmwlth. 2024).

Section 1547 of the Vehicle Code, which governs the implied consent requirements for personal operating privilege, provides, in relevant part:

> (a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).
>
> (b) Civil penalties for refusal.--
>
> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:
>
> (i) Except as set forth in subparagraph (ii), for a period of 12 months.
>
> * * *
>
> (2) It shall be the duty of the police officer to inform the person that:

13

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa. C.S. §1547(a)-(b) (bolded emphasis omitted).

In turn, Section 1613 of the Vehicle Code, which governs the implied consent requirements for commercial motor vehicle drivers, similarly provides:

(a) Implied consent.--A person who drives a commercial motor vehicle in this Commonwealth is deemed to have given consent to take a test or tests of the person's breath, blood or urine for the purpose of determining the person's alcohol concentration or the presence of other controlled substances.

(b) Tests ordered by police officer.--A test or tests may be administered at the direction of a police officer who, after stopping or detaining the commercial motor vehicle driver, has reasonable grounds to believe that the driver was driving a commercial motor vehicle while having any alcohol in his system.

(c) Warning against refusal.--A person requested to submit to a test as provided in subsection (a) shall be warned by the police officer requesting the test that refusal to submit to the test will result in the person's being disqualified from operating a commercial motor vehicle under subsection (e).

(d) Report on test refusal.--If the person refuses testing, the police officer shall submit a sworn report to [DOT] certifying that the test was requested pursuant to subsection (a) and that the person refused to submit to testing.

14

(d.1) Disqualification for refusal.--Upon receipt of a report of test refusal, [DOT] shall disqualify the person who is the subject of the report for the same period as if [DOT] had received a report of the person's conviction for violating one of the offenses listed in section 1611(a) (relating to disqualification). A person who is disqualified as a result of a report of test refusal that originated in this Commonwealth shall have the same right of appeal as provided for in cases of suspension. . . .

* * *

(d.2) Limitation on noncommercial motor vehicle-based refusal.--A report of test refusal which occurred prior to the effective date of this subsection and which did not involve a commercial motor vehicle shall not be considered by [DOT] for purposes of applying a disqualification pursuant to this section.

75 Pa. C.S. §1613(a)-(d.2) (bolded emphasis omitted).

Recently, in *Bergenstock*, we examined the implied consent warning requirements under the Vehicle Code. Therein, the licensee, who held a CDL, but was arrested in a personal vehicle, challenged the suspension of his personal operating privilege under Section 1547 of the Vehicle Code and disqualification of his CDL under Section 1613 on the basis he was not adequately warned of the consequences of refusal. The arresting officer read side one of the DL-26B form, which advised, in pertinent part: "If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months." *Bergenstock*, 311 A.3d at 1204. However, the officer did not read side two of the DL-26B form setting forth the warnings pertaining to the potential loss of his CDL under Section 1613 for refusing chemical testing. There was no dispute that the licensee refused to consent to testing and refused to sign the DL-26B form. On this basis, the trial court denied both statutory appeals. *Id*.

15

On appeal, we affirmed the suspension of the licensee's personal operating privilege under Section 1547 of the Vehicle Code upon concluding that the police officer had provided the necessary warning by reading side one of the DL-26B form. *Bergenstock*, 311 A.3d at 1205. However, we reversed the disqualification of the licensee's CDL under Section 1613 of the Vehicle Code because the officer did not read side two of the DL-26B form containing the warning applicable to commercial licenses. *Id*. at 1207. We specifically held that this warning must be provided to the holder of a CDL regardless of whether they are driving a commercial or personal vehicle at the time of the DUI arrest. *Id*. We emphasized that Section 1613 of the Vehicle Code "must be followed to ensure that commercial drivers, especially those who make their living from driving commercial vehicles, receive the warning that the General Assembly intended." *Id*. at 1208.

We note that *Bergenstock* was decided after the date of Licensee's arrest herein, which raises the question of retroactive application of a recent development in the law. On this point, our Supreme Court opined:

> The general rule in Pennsylvania is that appellate courts apply the law in effect at the time of appellate review. This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[] before the judgment becomes final. However, this general rule is not applied rotely. Whether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis. To determine whether a decision should have retroactive effect, a court should first determine whether the decision announced a new rule of law. If the decision announced a new rule, the court should then consider whether: (1) retroactive effect will further or hinder the purpose of the new rule; (2) the parties will be unfairly prejudiced because they relied on the old rule; and (3) giving the new rule retroactive effect will detrimentally affect the administration of justice.

16

*Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014) (internal citations and quotations omitted).

In *Bergenstock*, we did not announce a new rule of law, but merely applied the clear language of Section 1613, which was in full effect at the time,[7] and simply rejected DOT's inconsistent interpretation of it. *See id.* at 1207. Even if we were to conclude that *Bergenstock* pronounced a new rule applicable to commercial license holders, because the case is pending on direct appeal, Licensee is entitled to the benefit of changes in law, which will further the purpose of Section 1613, will not unfairly prejudice DOT, and will not detrimentally affect the administration of justice. We, therefore, conclude that *Bergenstock* readily applies to the disqualification of Licensee's commercial driving license.

Upon review, the trial court sustained Licensee's statutory appeal of the Disqualification Notice based solely upon the absence of reasonable grounds. Although the trial court found that Sergeant Lynch notified Licensee that her refusal would result in the suspension of her operating privilege under Section 1547 of the Vehicle Code, the trial court did not make specific findings as to whether Licensee was warned of the consequences of refusal under Section 1613 of the Vehicle Code. Without findings in this regard, we are unable to complete our appellate review. *See 22nd Street Auto Center v. Department of Transportation, Bureau of Motor Vehicles*, 313 A.3d 482 (Pa. Cmwlth. 2024); *Department of Transportation v. Grippo*, 533 A.2d 1142, 1143 (Pa. Cmwlth. 1987).

As for the relief requested by DOT of reinstating the one-year suspension of Licensee's operating privilege under Section 1547, DOT is improperly conflating these matters. Although DOT maintains that the trial court's November

---

[7] Section 1613 of the Vehicle Code was last amended on July 5, 2005, and effective 90 days thereafter.

15, 2023 order resolved both the Disqualification Notice and the Suspension Notice, per the trial court's opinion, the trial court only identified the Disqualification Notice and did not mention the Suspension Notice. At the hearing, DOT did not admit certified documents to satisfy its burden regarding the Suspension Notice or make it clear to the trial court that both notices were at issue. DOT made no attempt to correct this oversight in its Reconsideration Petition. *See* R.R. at 87a-91a. Consequently, DOT is not entitled to the relief requested under Section 1547 of the Vehicle Code at this juncture. A remand to the trial court is necessary to resolve Licensee's appeal of the Suspension Notice.

## IV. Conclusion

Accordingly, we reverse the order of the trial court and remand this matter to the trial court to conduct further proceedings and make additional findings of fact and conclusions of law consistent with the foregoing opinion.

 

MICHAEL H. WOJCIK, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roschanda Jackson                :
                                 :
         v.             :  No. 1473 C.D. 2023
                                 :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                                 :
          Appellant   :

O R D E R

AND NOW, this 30<u>th</u> day of <u>October</u>, 2025, the order of the Montgomery County Court of Common Pleas (trial court) is REVERSED, and this matter is REMANDED to the trial court to conduct further proceedings and make additional findings of fact and conclusions of law consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Roschanda Jackson | : | |
| | : | |
| v. | : | No. 1473 C.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | Submitted: August 8, 2025 |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## <u>OPINION NOT REPORTED</u>

CONCURRING AND DISSENTING OPINION BY
JUDGE WOLF                                    FILED: October 30, 2025

I agree with much of the learned Majority's well-reasoned opinion. Regarding whether the officer had reasonable grounds to believe Roschanda Jackson (Licensee) was driving under the influence (DUI), the evidence is overwhelming in my view, including Sergeant Lynch's body worn camera (BWC) video that was admitted into evidence.

The Majority aptly clarifies the two separate statutory consequences at issue here: (1) suspension of operating privilege under Section 1547 of the Vehicle Code, 75 Pa. C.S. § 1547, and (2) disqualification of commercial driver's license (CDL) under Section 1613 of the Vehicle Code, *id.* § 1613. Thus, "suspension"

under Section 1547 refers to a regular driver's license suspension and "disqualification" under Section 1613 refers to the loss of CDL driving privileges.

Licensee was an unrepresented litigant when she filed with the Montgomery County Court of Common Pleas (trial court) on a court form that she was petitioning for appeal with that court for reinstatement of driving privileges and she attached to her petition both her regular suspension notice and her CDL disqualification notice. It is clear that she received both notices, the first of which stated that it was "an Official Notice of Suspension of your Driving Privileges as authorized by Section 1547[(b)(I)(i)] of the Pennsylvania Vehicle Code" and the second of which stated that it was "an Official Notice of Disqualification of your commercial driving privilege as authorized by Section 1613 of the Pennsylvania Vehicle Code . . . ."

Thus, both issues, suspension and disqualification, were at play before the trial court. At the conclusion of the testimony and argument of the matter before the trial court, the court held: "The appeal is sustained and the suspension is rescinded." By order entered November 14, 2023, the Court marked an order indicating that the appeal is: "SUSTAINED and the suspension shall be RESCINDED." Nowhere in the transcript is there a reference to "disqualification." Nowhere in the record documents of the trial court is there a reference to disqualification.

On November 28, 2023, the Department of Transportation (DOT) filed a motion for reconsideration (which was later denied). In it, DOT *only* references the Section 1547 suspension issue. In its appellate brief, DOT *only* seeks relief as to the Section 1547 suspension:

> For the foregoing reasons, [DOT] prays that this Court will reverse the order of the [trial court], entered November 15, 2023, and direct the Bureau to reinstate the one-year suspension of the operating privilege of [Licensee], which was imposed in accordance with 75 Pa.C.S. § 1547(b)(1)(i).

DOT's Br. at 36.

Based on the foregoing, while Licensee petitioned for review of both the suspension and disqualification, and the trial court only dealt with the *suspension* under Section 1547, it is equally clear that DOT did not raise at the hearing and later abandoned any argument regarding Section 1613 *disqualification*. Because the trial court never clearly entered a judgment on the Section 1613 disqualification issue, and DOT has not sought relief in this regard with this court, as to that issue alone I would simply remand this matter to the trial court to enter a judgment in favor of Licensee on the Section 1613 disqualification issue, to make it clear that her CDL remains intact.[1]

As to the Section 1547 suspension issue, the BWC video in evidence clearly depicts Sergeant Lynch reading Licensee verbatim the warning relevant to the Section 1547 suspension from the DL-26. Because the evidence is so clear, I would not remand. I would reverse in part and reinstate the Section 1547 suspension. *See Melwood Corp. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 528 A.2d 668, 670 (Pa. Cmwlth. 1987) ("[W]here the fact[]finder has failed to make necessary

---

[1] Because Licensee held a CDL, she was entitled to receive "the more detailed warning" "that refusal to submit to the test will result in [her] being disqualified from operating a *commercial* motor vehicle." *Bergenstock v. Dep't of Transp., Bureau of Driver Licensing*, 311 A.3d 1201, 1207 (Pa. Cmwlth. 2024) (quoting 75 Pa.C.S. § 1613(c)) (emphasis added). The BWC shows Sergeant Lynch reading only the Section 1547 suspension warning from the front page of the DL-26 and not the more detailed warning. While such a warning may have been given in circumstances not captured on the BWC, since the issue was abandoned by DOT as described above, it should not be further litigated.

findings on a specific issue essential to the determination of a case, and where the record as a matter of law would support only one legal conclusion with respect to that issue , . . . we will resolve the issue on appeal.").

I further depart from the Majority to the extent that it contends that hearsay is admissible to show the state of mind of the officer. As I contended in my concurrence in *Cain v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 1151 C.D. 2022, filed May 9, 2025), slip op. at 4-5 (Wolf, J., concurring), 2025 WL 1354523, the "state of mind" of the officer is not relevant to these kinds of cases, because such a standard is subjective. Rather, evidence of statements made to an officer is *not hearsay*, i.e., it is not offered for the truth of the matter; rather, it is offered "to show the facts and circumstances as they appeared to the officer during the alleged DUI event. We evaluate those facts and circumstances objectively by asking what a hypothetical reasonable officer could conclude." *Id.* at 5.

I make a much further departure from the trial court's reference to hearsay. On the BWC, the civilian witness who claimed she observed Licensee driving the wrong direction in a lane of traffic also related to Sergeant Lynch that the witness spoke to Licensee and quoted Licensee as saying, "I know I'm drunk, but I'm home."[2] The trial court found: "The [c]ourt did not consider the witness's statements on the body camera for the truth of the matter asserted as they were hearsay but only for the purpose of why police conducted an investigation of Ms. Jackson." Reproduced Record at 100a. While it is true that this is not hearsay, this evidence is not offered for the purpose of "why police conducted an investigation."

---

[2] This was at the 30 second mark of the BWC video. As the evidence shows, she was not home but had pulled into a random residential property's long driveway and essentially passed out behind the wheel. Reproduced Record at 28a.

The purpose of said evidence compellingly supports a conclusion that the officer's suspicion that Licensee was DUI was reasonable. Among the "facts and circumstances as they appeared to the officer during the alleged DUI event" nothing could be more compelling than the driver admitting that they were driving drunk.

In sum, I would reverse in part and reinstate the Section 1547 suspension. I would further remand this matter to the trial court only to enter a judgment in favor of Licensee on the Section 1613 disqualification issue.


_____

MATTHEW S. WOLF, Judge